FILED
United States Court of Appeals
Tenth Circuit

June 26, 2012

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

LISA R. CHAPO,

        Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner of
the Social Security Administration,

        Defendant-Appellee.

No. 11-1455

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:10-CV-02123-PAB)**

Submitted on the briefs:[*]

Michael W. Seckar, Pueblo, Colorado, for Plaintiff-Appellant.

John F. Walsh, United States Attorney, District of Colorado; Debra J. Meachum,
Special Assistant United States Attorney, Social Security Administration, Office of
the General Counsel, Region VIII, Denver, Colorado; John Jay Lee, Of Counsel,
Regional Chief Counsel, Office of the General Counsel, Region VIII, Social Security
Administration, for Defendant-Appellee.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument.

Before **BRISCOE**, Chief Judge, **PORFILIO**, Senior Circuit Judge, and **MURPHY**, Circuit Judge.

---

**PORFILIO**, Senior Circuit Judge.

---

Plaintiff Lisa R. Chapo appeals from a district court order upholding the Commissioner's denial of her application for disability and supplemental security income benefits. "We independently review the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence." *Krauser v. Astrue*, 638 F.3d 1324, 1326 (10th Cir. 2011). Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we reverse and remand for the reasons explained below.

## AGENCY DECISION

The Administrative Law Judge (ALJ) denied benefits at the last step of the five-step process for determining disability. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (summarizing five-step process). At step one the ALJ noted that Ms. Chapo had not engaged in substantial gainful activity since December 1, 2004, the alleged disability onset date. At step two the ALJ found that Ms. Chapo "has the following severe impairments: mild facet disease and stenosis of the lumbar spine, affective disorder and anxiety disorder." R. at 9. The ALJ noted that she "also reported a history of latent tuberculosis," but found that this was not severe "because it is controlled by INH therapy that she is receiving through the health department." *Id.* at 10. At step three the ALJ concluded that Ms. Chapo's condition did not meet

or equal any of the conclusively disabling impairments listed in 20 C.F.R. 404, Subpart P, App. 1. *See* R. at 10-11. At step four the ALJ found that, physically, Ms. Chapo had a residual functional capacity (RFC) for light work, with certain postural restrictions ("only occasionally bend, squat, kneel or climb"). *Id.* at 11. The ALJ also found certain mental limitations on claimant's RFC, restricting her to "only occasionally deal[ing] with the general public," *id.*, and to "simple, unskilled work at best," *id.* at 15. Citing the postural restrictions and limitation on dealing with the public, the ALJ concluded that Ms. Chapo could not return to her past relevant work as a cashier checker. *See id.* At step five the ALJ found Ms. Chapo not disabled because, "[c]onsidering [her] age, education [high school], work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform," namely the jobs of appointment clerk, escort vehicle driver, and office helper identified by the vocational expert (VE) who testified at the evidentiary hearing. *Id.* at 15-16.

In determining Ms. Chapo's RFC for light work, the ALJ accorded "great weight" to the opinion of agency consulting physician Dr. Dipesh Amin, who examined Ms. Chapo in March of 2008 and found no physical restrictions relating to her back problems other than "appropriate breaks due to limitations of back pain." *Id.* at 13; *see also id.* at 163-64. The ALJ accorded "no weight" to an opinion given by Ms. Chapo's own physician, Dr. David Krause, who shortly before the hearing in November 2009, found Ms. Chapo capable of standing and walking for no more than

two hours, and sitting for no more than one hour, in an eight-hour day (which would have precluded work at either a light or sedentary level). *Id.* at 14; *see also id.* at 235-37. As for the mental aspect of Ms. Chapo's RFC, the record contained only one medical-source opinion. Shortly before the hearing, Jose Vega, Ph.D., submitted a narrative report and mental RFC form reflecting a number of serious deficiencies in Ms. Chapo's work-related functioning. *See id.* at 220-27. But the ALJ gave "little weight" to Dr. Vega's opinion in arriving at the less restrictive mental limitations included in Ms. Chapo's RFC, as summarized above. *Id.* at 15. The ALJ also accorded "no weight" to a corroborative mental RFC submitted by Tom Clemens, a licensed clinical social worker (LCSW), who had been treating Ms. Chapo for more than a year, in part because a LCSW is not an acceptable medical source for opinion evidence under the governing regulations. *See id.* at 14; *see also id.* at 171-73.

On appeal to the Appeals Council, Ms. Chapo challenged the ALJ's decision in several respects, in particular the ALJ's treatment of the opinion evidence in the record. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner for purposes of our review.

## CHALLENGES TO AGENCY DECISION

Ms. Chapo contends that (1) the ALJ's RFC determination was not supported by substantial evidence, in particular by medical opinion evidence directly supporting the RFC findings, and (2) the ALJ improperly handled the opinion evidence in the case. Her first contention rests on an unduly narrow view of the role of the

- 4 -

administrative factfinder in social security disability proceedings.  Her second contention, however, has merit, and leads us to reverse and remand this matter to the agency for further proceedings.

## A.  Opinion Evidence and RFC Findings Generally

Ms. Chapo argues that the ALJ's physical RFC determination lacks substantial evidentiary support because the conclusion that she can do light work is not found in the opinions of either Dr. Amin or Dr. Krause—the former did not find physical limitations that would restrict Ms. Chapo to light work, while the latter did not find physical capacities that would allow her to do light work.  She insists that the ALJ was not authorized to determine her RFC by splitting the difference between the two opinions.  First of all, this is a mischaracterization of what happened.  The ALJ did not triangulate from the two opinions, since he flatly rejected that of Dr. Krause.  Rather, the ALJ accorded weight *only* to Dr. Amin's opinion, and then tempered it, *in the claimant's favor*, by capping Ms. Chapo's RFC at the light level.  The ALJ could have been more explicit in tying this mitigating gesture to evidence in the record, but we are aware of no controlling authority holding that the full adverse force of a medical opinion cannot be moderated favorably in this way unless the ALJ provides an explanation for extending the claimant such a benefit.  Whether the ALJ was correct in relying on Dr. Amin's opinion (and rejecting Dr. Krause's) is, of course, another issue, which we address later in this decision.  Here, we hold only that, if a medical opinion adverse to the claimant has properly been given substantial weight,

the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit.

At certain points, Ms. Chapo's argument takes on a different focus, suggesting that the components of an RFC assessment lack substantial evidentiary support unless they line up with an expert medical opinion. This version of her position relates to both the physical RFC, where the RFC findings deviate from the one medical opinion given weight by the ALJ, and the mental RFC, where the only medical opinion was given virtually no weight. But, as the Commissioner notes, there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question. "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (following 20 C.F.R. § 416.927(e)(2) and SSR 96-59, 1996 WL 374183, at *5); *see also* 20 C.F.R. §§ 404.1546(c) and 416.946(c). We have thus "rejected [the] argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category." *Howard*, 379 F.3d at 949; *see, e.g.*, *Wall*, 561 F.3d at 1068-69 (upholding ALJ's findings on mental impairment where record did not contain any treating or examining medical opinions as to allegedly disabling pain disorder); *Bernal v. Bowen*, 851 F.2d 297,

- 6 -

302-03 (10th Cir. 1988) (holding ALJ properly made mental RFC findings without expert medical assistance).[1]

**B. Handling of Particular Medical Source Opinions in the Record**

**1. Dr. Vega's mental RFC findings**

We first address the opinion of Dr. Vega, as the ALJ's handling of it most clearly deviates from the governing law. After Ms. Chapo had been seen for major depression and PTSD by LCSW Clemens and other health professionals for over a year, she saw Dr. Vega to complete a summary "Med-9 Form" for the Colorado Department of Human Services. The ALJ properly gave no weight to this conclusory form, which lacked any functional findings. But, a month later, shortly before the hearing in this case, Dr. Vega saw Ms. Chapo again, this time performing a mental status exam, preparing a six-page narrative report, and filling out a detailed mental RFC form. Dr. Vega found moderate to extreme limitations in all categories of

---

[1]     Ms. Chapo also argues that, even if an ALJ is not generally prohibited from making mental RFC findings that do not rest on a medical opinion, the nature of the record here is such that, once the ALJ rejected Dr. Vega's unopposed opinion, it was error to proceed without obtaining another opinion. In support of this fallback position, she cites *Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1048-50 (10th Cir. 1993) (acknowledging that ALJ need not always obtain medical opinion for mental RFC findings, but, distinguishing *Bernal* factually, holding record was insufficient to permit ALJ to forgo medical opinion in that case). Because, as explained later, we hold that the ALJ erred in rejecting Dr. Vega's opinion, we need not decide whether, as it stands now, the mental aspect of this case would properly have fallen under *Bernal* (cited above) or *Andrade*.

mental functioning.[2]  He concluded that "[i]n her present condition and in the foreseeable future, she is not psychologically stable to where she would be able to function in a competitive job market.  She requires continued psychiatric care and treatment."  R. at 225.

While that overall conclusion gives some global indication of the severity of Ms. Chapo's condition, Dr. Vega's findings with respect to specific functional areas are crucial for purposes of the mental RFC assessment.  His most salient findings, organized here by categories of vocational significance rather than by the broad psychological categories used by the form, are set out below.

**Following instructions and work procedures:**
Marked to extreme limitation on ability to understand, remember, and carry out detailed instructions.
Moderate to marked limitation on ability to understand, remember, and carry out very short and simple instructions.
Marked to extreme limitation on ability to remember work-like procedures.

**Attention and concentration:**
Marked to extreme limitation on ability to maintain attention and concentration for extended periods.
Marked to extreme limitation on ability to work in coordination with or in proximity to others without being distracted.

**Reliability:**
Marked to extreme limitations on ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.

---

[2]     "Extreme" signifies "Severe limitations . . . [n]o useful ability to function"; "Marked" signifies "Serious limitations . . . ability to function . . . severely limited but not precluded"; "Moderate" signifies "Moderate limitations but still able to function"; "Slight" signifies "Some mild limitation . . . but generally functions well." R. at 226.

Marked to extreme limitation on ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number or length of rest periods.

**Independent decision-making/need for supervision:**
Marked to extreme limitation on ability to make simple work-related decisions.
Marked to extreme limitation on ability to set realistic goals or make plans independently of others.
Moderate to marked limitation on ability to sustain an ordinary routine without special supervision.

**Interaction with supervisors and coworkers:**
Marked to extreme limitation on ability to accept instructions and respond appropriately to criticism from supervisors.
Moderate to marked limitation on ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.
Marked to extreme limitation on ability to ask simple questions or request assistance.

**Social Interaction:**
Marked to extreme limitation on ability to interact appropriately with the general public.
Moderate to marked limitation on ability to maintain socially appropriate behavior.

**Adaptation and orientation to work setting:**
Marked to extreme limitation on ability to respond appropriately to changes in work setting.
Marked to extreme limitation on ability to remember locations.
Moderate to marked limitation on ability to travel in unfamiliar place.

*See* R. at 226-27.

Dr. Vega thus found that Ms. Chapo's mental limitations significantly affected her ability to work in many different respects—some of which would likely interfere with work in almost any setting, and some of which would also likely interfere particularly with her ability to perform the three jobs identified by the VE in response

to the ALJ's questioning at the hearing.  But virtually none of these complications were considered by the VE.  Rather, the VE was able to opine that Ms. Chapo was capable of performing work, and in particular the specified jobs, because the ALJ included in his hypothetical to the VE only one of the mental restrictions found by Dr. Vega (and even that just to a limited degree):  the only mental restriction acknowledged in the hypothetical was that her work should be restricted to "only occasional[ly] dealing with the general public."  R. at 30.[3]

Accordingly, the ALJ's justification for effectively rejecting (or, as the ALJ put it, "according little weight to") Dr. Vega's unopposed findings is critical to the validity of the ALJ's decision.  That justification consisted of one point:  "because at the time of the hearing, Dr. Vega had been in a professional relationship with [Ms. Chapo] for merely two months."  R. at 15.  This may be a valid reason not to accord Dr. Vega's findings the conclusive weight of a treating medical-source

---

[3]      Indeed, the ALJ did not even include the restriction to "simple, unskilled work at best" acknowledged in his own decision.  R. at 15.  While the jobs cited by the VE happen to be unskilled, that just accounted for issues of skill transfer, not impairment of mental functions—which "are not skills but, rather, general prerequisites for most work at any skill level."  *Wayland v. Chater*, Nos. 95-7029 and 95-7059, 1996 WL 50459, at *2 (10th Cir. Feb. 7, 1996) (unpub.) (drawing on several published cases in noting restriction to unskilled jobs does not address mental impairment); *see Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (holding limitation to unskilled work did not account for several effects of mental impairment).  As for the restriction to "simple" work, it is doubtful that this vague catch-all term would have been sufficient to capture the various functionally distinct mental limitations recognized by Dr. Vega; but in any event, the failure of the ALJ to include his own mental restriction would be fatal to the validity of the hypothetical to the VE.  *See Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000) (holding hypothetical to VE is sufficient if "it contained all of the limitations found to exist by the ALJ").

opinion, but that just effectively reduces them to the status of an examining-source opinion; it is not by itself a basis for rejecting them—otherwise the opinions of consultative examiners would essentially be worthless, when in fact they are often fully relied on as the dispositive basis for RFC findings.[4] The Commissioner has not cited a single authority for the facially dubious proposition that the opinion of an examining medical source is, *as such*, dismissible. To the contrary, as the regulations governing medical opinions recognize, an examining medical-source opinion is, *as such*, given particular consideration: it is presumptively entitled to more weight than a doctor's opinion derived from a review of the medical record. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1)[5]; *see, e.g.*, *Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996). An opinion found to be an examining rather than treating medical-source opinion may be dismissed or discounted, of course, but that must be based on an evaluation of all of the factors set out in the cited regulations and the ALJ must "provide specific, legitimate reasons for rejecting it." *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003) (specifically addressing situation where, as here, an examining doctor lacks sufficient history with the claimant to qualify as a treating

---

[4]  The ALJ's reliance on examining-consultant Dr. Amin's report for his physical RFC determination here is a case in point.

[5]  We refer to the regulations in effect at the time of the ALJ's decision. The cited provisions are now found, with substantially the same language, at 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1).

source).  The ALJ did not do that here—the ALJ's assessment simply ended with the recognition of Dr. Vega's limited professional relationship with Ms. Chapo.

Again, it is important to keep in mind that Dr. Vega's detailed findings are not opposed by those of any other medical source, much less a treating source to whom they could be presumptively subordinated.[6]  Nor did the ALJ find that Dr. Vega's findings were inconsistent with his associated examination and report or with other evidence identified from the record.  We agree with Ms. Chapo that the ALJ's treatment of Dr. Vega's unopposed mental RFC findings was erroneous and that this error fatally undermined the basis of the ALJ's disposition at step five.

The ALJ's handling of Dr. Vega's findings is also problematic in another, related respect.  The ALJ accepted, at least to a limited extent, the restriction recognized by Dr. Vega with regard to Ms. Chapo's difficulty in dealing with the public.  But the ALJ fully discounted the bulk of Dr. Vega's mental RFC limitations with no explanation at all as to why one part of his opinion was creditable and the rest was not.  That is error under this circuit's case law.  We have repeatedly held that "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."

---

[6]  Dr. Vega's findings were similar to those of LCSW Clemens, who saw Ms. Chapo for over a year (and whose records Dr. Vega reviewed as part of his evaluation.).  But in numerous respects, Clemens consistently noted more extreme deficiencies than those found by Dr. Vega.  The ALJ rejected Clemens's findings, because an LCSW is not an acceptable medical source and because the ALJ deemed his findings so extreme as to be implausible for a patient that had not required hospitalization for mental impairment.

*Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (following *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004), and *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004)). Ms. Chapo does not make this specific objection, but as we are already reversing and remanding for other reasons, we note this problem in the hope of forestalling the repetition of avoidable error.

In sum, the ALJ's handling of Dr. Vega's findings was erroneous and, as a result, the dispositive hypothetical inquiry put to the VE was fatally defective. Indeed, that hypothetical did not even include a restriction (to "simple" work) that the ALJ himself recognized in his decision. *See supra* note 3. This matter must be remanded for further proceedings, wherein the ALJ must either obtain a mental RFC determination from an examining source to oppose to Dr. Vega's, articulate some other adequate basis for discounting Dr. Vega's findings, or come back to the VE with a proper hypothetical including those limitations (and his own restriction to "simple" work, should the ALJ find it appropriate to re-impose such a restriction in the RFC determined on remand).

## 2. Physical RFC determination

Dr. Amin, the agency's examining consultant, found no sitting, standing, walking, or lifting limitations whatsoever relating to Ms. Chapo's spinal condition, while her physician, Dr. Krause, found limitations that would clearly preclude any substantial gainful activity. The ALJ stated that he was giving "great weight" to Dr. Amin's opinion, because "he performed a thorough examination of the [claimant]

- 13 -

and his findings are supported by and consistent with the medical evidence of record." R. at 13. The ALJ gave "no weight" to Dr. Krause's opinion, because "he had begun treating the claimant in the month immediately preceding the hearing" and "none of his treating records, if any, are in the medical evidence of record." *Id.* at 14.

The medical evidence the ALJ cited as supporting Dr. Amin's findings included Dr. Amin's notation of negative straight leg raises and normal gait. This was in March 2008, when there were no diagnostic images to indicate any underlying skeletal basis for Ms. Chapo's complaints of lower back and leg pain. Later in 2008, an X-ray was taken showing "mild scoliosis" and "some mild facet hypertrophic changes at L3-4, L4-5, and L5-S1." *Id.* at 206. By August 2009, positive straight leg raises and a guarded gait are noted in her treating records, *id.* at 194, and a September 2009 MRI ordered by Dr. Krause revealed a broad-based disk bulge at L5-S1 resulting in bilateral encroachment on the S1 nerve root, *id.* at 231. The relevant medical record obviously underwent material changes in the twenty months between Dr. Amin's report and the ALJ's decision in November 2009. Yet the agency did not seek another exam by Dr. Amin or provide him the new information and request a follow-up to his opinion. Thus, while Dr. Amin's opinion may have been "supported by and consistent with the medical evidence of record" when he gave it in early 2008, it does not account for material objective evidence developed long afterward. The staleness of his opinion—which, again, denied *any back-related limitations at all on primary exertional activities* (which would leave Ms. Chapo free to engage in even

heavy work, albeit with minor postural limitations)—is perhaps reflected in the ALJ's recognition that Ms. Chapo's skeletal condition actually restricted her to a limited range of light work.

In contrast, Dr. Krause had the benefit of the MRI when he gave his opinion (while he didn't expressly refer to the MRI, he is the one who ordered it and the MRI report recites that it was distributed to him). Nevertheless, the ALJ was justified in rejecting his summary RFC opinion (related in check-box/fill-in-the-blank format with no explanation or supporting report), because (1) he had just begun treating claimant a month before the hearing *and* (2) none of his treating notes, if any, were in the record. From what we said earlier about the ALJ's rejection of Dr. Vega's findings, the ALJ's addition of the second reason for rejecting Dr. Krause's opinion is critical—otherwise we would again have a medical source opinion rejected solely because it might not qualify as a treating opinion.

The ALJ's reliance on the patently stale opinion of Dr. Amin remains troubling, notwithstanding the rejection of the opposing opinion of Dr. Krause and the ALJ's own moderation of the more extreme implications of Dr. Amin's finding of no limitation with respect to the basic exertional requirements of sitting, standing, walking, and lifting. While we need not make a definitive determination on this question, we do encourage the ALJ to obtain an updated exam or report to forestall any potential problem from arising in this respect on remand.

The judgment of the district court is REVERSED and the case is REMANDED with directions to remand the matter, in turn, to the agency for further proceedings consistent with this opinion.