FILED
United States Court of Appeals
Tenth Circuit

April 10, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ELOSIA R. CROWDER,

   Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

   Defendant - Appellee.

No. 13-1222
(D.C. No. 1:12-CV-00735-CMA)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and
**BALDOCK**, Circuit Judge.

Elosia R. Crowder challenges the denial of her application for supplemental

security income benefits. Exercising jurisdiction under 28 U.S.C. § 1291 and

42 U.S.C. § 405(g), we remand for reconsideration of certain opinion evidence.

---

[*]   After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## Background

Employing the five-step sequential evaluation process, *see* 20 C.F.R. § 416.920, at step one the administrative law judge (ALJ) found that Ms. Crowder was not engaging in substantial gainful activity. At step two, he assessed her with the severe impairments of asthma, anxiety disorder, and depression. He then found at step three that her impairments did not meet or equal a listing because she had no episodes of decompensation and only moderate difficulties in activities of daily living; social functioning; and concentration, persistence, and pace. At step four, the ALJ assessed Ms. Crowder's residual functional capacity (RFC) as "a full range of work at all exertional levels but with the following non-exertional limitations: the claimant is limited to unskilled work in a low stress environment where there is not frequent or prolonged contact with co-workers, supervisors, or the general public and where there is no concentrated exposure to dust or fumes." Aplt. App., Vol. 2 at 14. Because she did not have any past relevant work to consider, the ALJ continued to step five, concluding that there were jobs in the national economy that she could perform. Accordingly, he found her to be not disabled and denied her application for benefits. The Appeals Council denied review and the district court affirmed.

## Analysis

"We independently review the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence." *Chapo v. Astrue*, 682 F.3d 1285, 1287 (10th Cir. 2012) (internal quotation marks omitted). On appeal,

Ms. Crowder focuses on the ALJ's analysis of three medical-source opinions: examining licensed psychologist Jose Vega, Ph.D.; treating licensed clinical social worker Maria Cramer; and examining physician Charlene Borja, D.O. We conclude that reversal is required because the ALJ did not properly evaluate the opinions of Dr. Vega and Ms. Cramer.

*Dr. Vega*

Dr. Vega examined Ms. Crowder at her counsel's request. He provided a written report of his examination and a RFC form opining that Ms. Crowder has moderate-to-marked limitations in seventeen of twenty evaluation areas, including, as summarized by the ALJ, "adaptation, social interaction, concentration, persistence, and pace, and understanding and memory." Aplt. App., Vol. 2 at 17. The ALJ effectively rejected Dr. Vega's findings, giving them "very little weight because they are internally inconsistent, the exam was undertaken at the request of the claimant's representative, and there is no treating relationship between the examiner and the claimant." *Id.*; *see also Chapo*, 682 F.3d at 1291 (equating "according little weight to" with "effectively rejecting" a medical opinion). But none of the reasons given by the ALJ support effectively rejecting Dr. Vega's opinion.

The ALJ's first reason for rejecting Dr. Vega's findings is that "they are internally inconsistent." Aplt. App., Vol. 2 at 17. The ALJ then further explained: "With respect to the internal inconsistency of these results, the evaluation form completed by the examiner assigns double values to each quality so that the claimant

has numerous factors assessed as both moderate and marked at the same time, which prevents an effective evaluation of the severity of the claimant's limitations." *Id.*

Dr. Vega circled both "moderate" and "marked" and drew an arrow pointing from "moderate" to "marked." As Ms. Crowder asserts, this is easily interpreted as an opinion of "moderate-to-marked" limitations. *See Chapo*, 682 F.3d at 1289-90 (noting that Dr. Vega opined that claimant had "[m]oderate to marked limitation" in some areas and "[m]arked to extreme limitation" in others). At the very least, it is an opinion that Ms. Crowder suffered from moderate limitations in these categories. Under these circumstances, the fact that Dr. Vega did not choose either "moderate" or "marked" is not an adequate ground to reject the opinion entirely.[1]

The Commissioner suggests that we uphold the decision under a different interpretation of "internally inconsistent," pointing out variances between Dr. Vega's written report and his mental RFC findings. Any such inconsistencies, however, go beyond the ALJ's stated explanation, which focuses on Dr. Vega's method of completing the RFC form. "[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007).

Next, the ALJ stated that "the exam was undertaken at the request of the claimant's representative." Aplt. App., Vol. 2 at 17. This implies that a consulting

---

[1]    This is not to say that we encourage Dr. Vega's approach. A more precise evaluation of a claimant's RFC is likely to be of more value than a broader, unspecific opinion.

- 4 -

examiner's opinion is necessarily less trustworthy when it is sought or obtained by the claimant, a position that this court long ago rejected in the context of treating physicians' opinions. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1253 (10th Cir. 2002); *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987). In *Frey*, for example, this court held that an ALJ could not reject a treating physician's opinion on the ground that "a family doctor naturally advocates his patient's cause" because "[i]t is a conclusory statement that contradicts our established legal rule, without suggesting some exceptional basis in the facts of this case." 816 F.2d at 515 (internal quotation marks omitted). By the same logic, rejecting Dr. Vega's opinion on the ground that the opinion was obtained by Ms. Crowder's counsel fails to follow the established legal rules for weighing medical opinions. *See* 20 C.F.R. § 416.927(c) (setting forth factors for weighing medical opinions). And the record reveals no "exceptional basis in the facts of this case" for ignoring the general rule. *Frey*, 816 F.2d at 515.

Finally, the ALJ stated that there was no treating relationship between Dr. Vega and Ms. Crowder. Although the lack of a treating relationship is relevant to the weight to be afforded an opinion, it is not grounds for simply rejecting an opinion. *See Chapo*, 682 F.3d at 1291. In *Chapo*, in which Dr. Vega offered an opinion on behalf of a different claimant, "the ALJ's justification for effectively rejecting . . . Dr. Vega's unopposed findings" was that "'at the time of the hearing, Dr. Vega had been in a professional relationship with [the claimant] for merely two months.'" *Id.* (quoting the administrative record). This court held:

This may be a valid reason not to accord Dr. Vega's findings the conclusive weight of a treating medical-source opinion, but that just effectively reduces them to the status of an examining-source opinion; it is not by itself a basis for rejecting them—otherwise the opinions of consultative examiners would essentially be worthless, when in fact they are often fully relied on as the dispositive basis for RFC findings. . . . An opinion found to be an examining rather than treating medical-source opinion may be dismissed or discounted, of course, but that must be based on an evaluation of all of the factors set out in the . . . regulations and the ALJ must provide specific, legitimate reasons for rejecting it. The ALJ did not do that here—the ALJ's assessment simply ended with the recognition of Dr. Vega's limited professional relationship with [the claimant].

*Id.* (footnote, citation, and internal quotation marks omitted). Accordingly, rather than rejecting Dr. Vega's opinion because he has not treated Ms. Crowder, the ALJ must apply the regulations and weigh the opinion under the standards for considering the opinion of a non-treating, but examining, medical source. *See id.* at 1291, 1292.[2]

*Ms. Cramer*

Ms. Cramer was one of Ms. Crowder's therapists. She opined in a RFC form that Ms. Crowder has marked limitations in two areas: "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number or

---

[2]     *Chapo* also noted that "Dr. Vega's detailed findings are not opposed by those of any other medical source, much less a treating source to whom they could be presumptively subordinated." 682 F.3d at 1291. Here, Dr. Vega's findings are not inconsistent with much of the medical evidence of record, including counseling and treatment notes, the opinion of another consulting psychologist, and the RFC assessments of licensed clinical social worker Maria Cramer. The only flatly contradictory evidence is the opinion of an agency reviewer who "didn't really see many difficulties psych-wise," Aplt. App., Vol. 2 at 236, a conclusion that is not supported by the record.

length of rest periods," and "[t]he ability to interact appropriately with the general public." Aplt. App., Vol. 2 at 269. She also assessed Ms. Crowder with moderate limitations in several areas, including "[t]he ability to understand and remember detailed instructions," "[t]he ability to carry out detailed instructions," "[t]he ability to maintain attention and concentration for extended periods," and "[t]he ability to accept instructions and respond appropriately to criticism from supervisors." *Id.* at 268-69 (emphasis omitted).

The ALJ stated that because a licensed clinical social worker is not an acceptable medical source, he gave Ms. Cramer's opinion either "little weight" or "no weight." *Id.* at 16. He then stated, "However, the undersigned considered this information to help the undersigned understand how the individual's impairments affect the claimant's ability to work." *Id.* Although this evaluation is partially consistent with the appropriate legal standards for evaluating "other source" evidence, it does not entirely conform to those standards.

A licensed clinical social worker is not an "acceptable medical source," but instead is an "other source." 20 C.F.R. § 416.913(a), (d). But that does not mean an ALJ can ignore a licensed clinical social worker's opinion entirely. "[W]e may use evidence from 'other sources,' . . . to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006); *see also* 20 C.F.R. § 416.913(d).

> With the growth of managed health care in recent years and the
> emphasis on containing medical costs, medical sources who are not

"acceptable medical sources," such as nurse practitioners, physician assistants, and *licensed clinical social workers*, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *3 (emphasis added). The Social Security Administration has directed ALJs to apply the same factors to opinion evidence from "other sources" as they do to opinion evidence from "acceptable medical sources," including the length and frequency of the treatment relationship, the opinion's consistency with other evidence, the degree of support offered for the opinion, how well the source explains the opinion, whether the source is a specialist, and "[a]ny other factors that tend to support or refute the opinion." *Id.* at *4-5.

It appears that the ALJ recognized that Ms. Cramer could not offer a medical diagnosis to establish an impairment because she is not an "acceptable medical source." *See* 20 C.F.R. § 416.913(a). And the ALJ also apparently recognized that he should not entirely dismiss Ms. Cramer's opinion, stating that he considered her opinion to help him understand how Ms. Crowder's impairments affect her ability to work. But there is little in the decision other than a passing reference that "the treatment notes do indicate that Ms. Cramer met with the claimant on several occasions" Aplt. App., Vol. 2 at 16, to show that the ALJ considered the prescribed factors in weighing this "other source" opinion. Rather, it appears that the primary

(and perhaps overriding) factor for the ALJ was that she was not an "acceptable medical source."

The Commissioner asserts that the ALJ effectively incorporated Ms. Cramer's opinion into the RFC. The ALJ did limit Ms. Crowder to simple work in a low stress environment with no frequent or prolonged contact with co-workers, supervisors, or the general public. These restrictions, however, account for only one of the two areas that Ms. Cramer assessed with "marked" limitations and only some of the areas that she assessed with "moderate" limitations. The RFC did not address the "marked" limitation in concentration, persistence, and pace or the "moderate" limitation in maintaining attention and concentration for extended periods. And there is no explanation why the ALJ would accept one of the "marked" limitations identified by Ms. Cramer, but not the other. We have discouraged ALJs from picking and choosing, without explanation, among portions of an uncontradicted opinion.[3] *See Chapo*, 682 F.3d at 1291-92; *Haga*, 482 F.3d at 1208.

---

[3]     Citing two medical opinions in the record, the Commissioner asserts that Ms. Cramer did not offer an uncontradicted opinion on concentration, persistence, and pace. One of those opinions is from a consultative examining psychologist, who stated that "[p]ersistence and pace were adequate," but who ultimately opined that Ms. Crowder "has difficulty maintaining focus and concentration, energy level. . . . She will have difficulty maintaining a regular work schedule, focusing and concentrating to work." Aplt. App., Vol. 2 at 165, 166. Thus, it is not apparent that this opinion contradicts Ms. Cramer's opinion. The other cited evidence is the opinion of an agency reviewer who "didn't really see many difficulties psych-wise," *id.* at 236, a conclusion that is not supported by the record.

Further, the ALJ's failure to address concentration, persistence, and pace in his RFC analysis is puzzling given that at step three, he assessed Ms. Crowder with moderate limitations in this area. Although he said at step three that he would later discuss how he arrived at this conclusion, *see* Aplt. App., Vol. 2 at 13, his later analysis does not address concentration, persistence, and pace. Nor does the decision otherwise explain why he did not include in the RFC any limitations in concentration, persistence, and pace.[4]

*Dr. Borja*

Dr. Borja opined that, during a normal 8-hour workday, Ms. Crowder could stand or walk "8 hours with frequent breaks" and sit "8 hours with frequent breaks." Aplt. App., Vol. 2 at 173. Ms. Crowder contends that the ALJ did not account for Dr. Borja's specification of "frequent breaks" and did not explain why he was not including that limitation. It appears that Dr. Borja's opinion was given in the context of assessing physical limitations, however, and once the ALJ determined that Ms. Crowder had no severe physical impairments other than asthma, there may have

---

[4] It is the Commissioner's burden at step five to show that Ms. Crowder can perform work in the national economy. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The VE testified that a person with Ms. Crowder's RFC and marked limitations in (1) "the ability to complete a normal work day and work week without interruption from psychologically based symptoms," and (2) "the ability to perform at a consistent pace without an unreasonable number or length of rest periods" could not perform the jobs he identified, or any other jobs. Aplt. App., Vol. 2 at 33. Nothing in the record indicates whether a person with moderate limitations in concentration, persistence, and pace could perform the jobs that the VE identified and the ALJ relied upon.

been no need for the ALJ to consider the frequent-breaks restriction. But given that this case must be remanded for proper consideration of the other opinions, we need not decide this issue.

## *Conclusion*

Because the ALJ did not weigh the opinions of Dr. Vega and Ms. Cramer under the proper legal standards, we must remand for the ALJ to reweigh these opinions. If the ALJ again chooses to assess moderate impairments in concentration, persistence, and pace at step three, but not to include any limitation on concentration, persistence, and pace in the RFC at step four, he should explain the basis for his decision. We express no opinion on the weight to be given any opinions or on the ultimate determination as to whether Ms. Crowder is disabled and entitled to benefits.

The judgment of the district court is reversed and the case is remanded with directions to remand the matter, in turn, to the agency for further proceedings consistent with this decision.

Entered for the Court

Bobby R. Baldock
Circuit Judge