FILED
United States Court of Appeals
Tenth Circuit

April 30, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

BILLY J. PARKER,

     Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

     Defendant - Appellee.

No. 18-1160
(D.C. No. 1:17-CV-01280-CMA)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **BACHARACH**, and **PHILLIPS**, Circuit Judges.
_____

This appeal grew out of a denial of disability insurance benefits and

supplemental security income. The applicant, Mr. Billy Parker, sought

these benefits based on alleged physical and mental impairments. Under

the applicable regulations, the Social Security Administration had to assess

Mr. Parker's ability to perform work-related activities with his

_____

[*]    Oral argument would not materially aid our consideration of the
appeal, so we have decided the appeal based on the briefs and appendix.
*See* Fed. R. App. P. 34(a)(2); Tenth Cir. R. 34.1(G).

    This order and judgment does not constitute binding precedent except
under the doctrines of law of the case, res judicata, and collateral estoppel.
But our order and judgment may be cited for its persuasive value if
otherwise appropriate. *See* Fed. R. App. P. 32.1(a); Tenth Cir. R. 32.1(A).

limitations.[1] To help with this assessment, the agency obtained opinions from two doctors; both said that Mr. Parker would face moderate limitations when engaging in certain activities. The Social Security Administration denied benefits, and the district court affirmed.

The agency appeared to credit both doctors' opinions, but the agency's findings regarding Mr. Parker's capabilities conflicted with the doctors' opinions about his limitations. This conflict might have been permissible if the agency had explained why it chose to reject the doctors' opinions, but the agency didn't supply an explanation. Given the lack of explanation, we conclude that the district court should have reversed the agency's denial of benefits and remanded for reconsideration of what Mr. Parker could do given his limitations.

1.    **The agency obtains medical opinions involving Mr. Parker's mental limitations.**

The agency found that Mr. Parker had both physical and mental impairments. Here we are focusing on the mental impairments, which included post-traumatic stress disorder, anxiety disorder, adjustment disorder with depression, and antisocial personality disorder. Given these conditions, the agency had to determine what Mr. Parker could still do in a work setting.

---

[1]    The agency refers to this assessment as one involving "residual functional capacity." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

To assist with this determination, the agency obtained medical opinions from Ellen Ryan, M.D. and Donald Degroot, Ph.D. Dr. Ryan reviewed the pertinent medical records and opined that Mr. Parker had some moderate limitations in his mental abilities, including in his ability to accept supervision and interact with coworkers.[2] Dr. Degroot examined Mr. Parker and opined that he was moderately limited in various mental activities, including his ability to respond appropriately to usual work situations and routine changes in his work setting.[3]

## 2. The agency evaluates the medical opinions and assesses Mr. Parker's capacity.

After obtaining the two medical opinions, the agency was obligated to evaluate them in assessing Mr. Parker's ability to perform work-related tasks. *See* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) (evaluating medical opinions in assessing residual functional capacity); *see generally* 20 C.F.R. §§ 404.1520(a)(4) & (e), 416.920(a)(4) & (e) (describing the agency's obligation to assess a claimant's residual functional capacity based on all of the relevant evidence). Because the agency bore the ultimate responsibility to assess Mr. Parker's abilities, the agency could

---

[2] Dr. Degroot also opined that Mr. Parker was moderately impaired in his ability to interact appropriately with supervision and coworkers. But Mr. Parker does not rely on Dr. Degroot's opinion as to this impairment.

[3] In addition, Dr. Ryan opined that Mr. Parker had a moderate limitation in his ability to respond appropriately to changes in a work setting. But this part of Dr. Ryan's opinion is not involved in the appeal.

decide whether it agreed or disagreed with the medical opinions. In carrying out this responsibility, the agency apparently agreed with the two medical opinions, stating that it gave "significant" weight to Dr. Ryan's opinion and "great" weight to Dr. Degroot's.

But Mr. Parker questions whether the agency actually incorporated these medical opinions when assessing his ability to perform work-related activities. If the agency had decided to omit particular limitations embodied in the two medical opinions, the agency needed to explain the omissions. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (stating that the agency may dismiss or discount medical opinions but "must provide specific, legitimate reasons" for doing so (internal quotation marks omitted)).

**3.   We engage in de novo review.**

The issue here is whether the agency applied the correct legal standards in assessing Mr. Parker's residual functional capacity. *See Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (stating the standard for review of agency decisions). This issue is a legal one, *see Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984), so our review is de novo,

*see Elder v. Holloway*, 510 U.S. 510, 516 (1994) (stating that questions of law are subject to de novo review).

**4.** **In assessing Mr. Parker's mental limitations, the agency failed to incorporate the pertinent parts of the two medical opinions.**

We conclude that the agency didn't incorporate pertinent parts of the two medical opinions in assessing Mr. Parker's work-related capabilities. For example, the agency didn't incorporate Dr. Ryan's assessment of Mr. Parker's ability to interact with his supervisors and coworkers. Dr. Ryan had opined (1) that Mr. Parker could not work closely with supervisors and coworkers and (2) that he could only accept supervision or relate to coworkers if the contact were infrequent. But the agency ultimately concluded that Mr. Parker could frequently interact with supervisors and coworkers.

A similar discrepancy exists between the agency's assessment and Dr. Degroot's opinion. Dr. Degroot opined that Mr. Parker was moderately impaired in his abilities to respond appropriately to usual work situations and to changes in the usual work setting. This impairment, however, was omitted in the agency's findings about what Mr. Parker could do despite his limitations.

The commissioner points out that the agency rejected Dr. Ryan's opinion involving Mr. Parker's ability to interact with the general public. According to the commissioner, one can easily infer that the agency had

5

the same reason for rejecting Dr. Ryan's opinion involving interaction with supervisors and coworkers. We disagree. In discussing Mr. Parker's ability to interact with the general public, the agency pointed to his ability to do things like go to a dog park with his children and run errands with his mother. Though these activities could bear on Mr. Parker's ability to interact with the public, they do not suggest that he could frequently accept supervision and interact with coworkers in the face of a contrary medical opinion. Indeed, we have treated interaction with the public as distinct from interaction with supervisors or coworkers. *Chapo v. Astrue*, 682 F.3d 1285, 1290 & n.3 (10th Cir. 2012). We thus conclude that the agency did not incorporate Dr. Ryan's opinion that Mr. Parker was moderately limited in his ability to interact with supervisors and coworkers.

The commissioner also argues that the agency incorporated Dr. Degroot's opinion by finding that Mr. Parker was unable to (1) engage in work that required complex tasks or instructions or (2) work at a pace customary for a production line. We have generally held that restricting a claimant to particular work activities does not adequately account for the claimant's mental limitations. *See id.* at 1290 n.3. On the other hand, we have held that the agency can sometimes account for mental limitations by limiting the claimant to particular kinds of work. *See Vigil v. Colvin*, 805 F.3d 1199, 1203-04 (10th Cir. 2015). Unless the connection (between the limitation and the work) is obvious, however, the agency must

6

ordinarily explain how a work-related limitation accounts for mental limitations reflected in a medical opinion. *See id.*; *Wayland v. Chater*, No. 95-7059, 1996 WL 50459, at *2 (10th Cir. Feb. 7, 1996) (unpublished).

Here the connection isn't obvious, and the agency didn't explain how its finding would account for Dr. Degroot's opinion. Indeed, any job would typically require an ability to respond appropriately to usual work situations and changes in routine work settings. *See* SSR 85-15, 1985 WL 56857, at *4 (1985) ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) . . . to respond appropriately to . . . usual work situations; and to deal with changes in a routine work setting."). We thus conclude that the agency's findings, restricting the complexity or pace of Mr. Parker's work, did not adequately incorporate Dr. Degroot's opinion involving a moderate limitation in the ability to respond appropriately to usual work situations and changes in a work setting.

**5.    The agency fails to explain omission of the pertinent limitations in the two medical opinions.**

The agency presumably could have disagreed with Dr. Ryan and Dr. Degroot. But the agency didn't express any disagreement. The agency instead said that it gave significant weight to Dr. Ryan's opinion and great weight to Dr. Degroot's. *See* Part 2, above. Given the discrepancy between the agency's assessment of mental capacity and the medical opinions, the

7

agency had an obligation to provide an explanation. *See* SSR 96-8p, 1996 WL 374184, at *7 (1996) (stating that if the adjudicator's assessment of residual functional capacity "conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted").

The agency adopted other opinions by Dr. Ryan and Dr. Degroot, but not their opinions involving moderate limitations in the abilities (1) to interact with supervisors or coworkers or (2) to respond appropriately to usual work situations or changes in a work setting. The absence of explanation required the district court to reverse the denial of benefits. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (holding that the administrative law judge erred in failing to explain why he had rejected some of the consulting doctor's restrictions as to the residual functional capacity "while appearing to adopt others").

**6.     The presence of substantial evidence does not prevent reversal.**

The commissioner argues that the agency had substantial evidence for its assessment of Mr. Parker's limitations. But Mr. Parker has not questioned the existence of substantial evidence. He argues instead that the agency legally erred by failing to explain why its assessment of Mr. Parker's mental limitations deviated from the two medical opinions. If Mr. Parker is right about the legal error, we must reverse even if the agency's findings are otherwise supported by substantial evidence. *Byron v. Heckler*, 742 F.2d 1232, 1234–35 (10th Cir. 1984); *see Jensen v.*

8

*Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (stating that the agency's "failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal" (brackets & internal quotation marks omitted)).

**7.    The agency's errors are prejudicial.**

The commissioner contends that even if the agency had erred in omitting moderate limitations in interacting with supervisors and coworkers, the error wouldn't have affected the outcome. For the sake of argument, we can assume that the commissioner is right. But this assumption would not have affected the impact of the error involving limitations in the ability to respond appropriately to usual work situations and routine changes in his work settings. This error would require reversal even if the agency's other errors would have been harmless. We thus reverse and remand, with instructions to remand for the Social Security Administration to reconsider its assessment of what Mr. Parker can do despite his mental limitations.

Entered for the Court


Robert E. Bacharach
Circuit Judge

9