FILED
United States Court of Appeals
Tenth Circuit

June 28, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DIANE MARTINEZ,

      Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

      Defendant - Appellee.

No. 18-1218
(D.C. No. 1:16-CV-2938-CMA)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **McKAY**, and **LUCERO**, Circuit Judges.
_____

Diane Martinez appeals from the district court's order denying her application

for Social Security disability benefits and supplemental security income benefits.

Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm.

## I.  BACKGROUND

Ms. Martinez applied for disability insurance benefits and supplemental

security income asserting that she was disabled due to a wrist injury, elbow and

shoulder problems, back pain, boils, abdominal pain, insomnia, anxiety, and

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

depression. After her claims were denied initially and on reconsideration, an administrative law judge (ALJ) considered her claims and issued a decision finding Ms. Martinez was not disabled at the fifth and final step of the sequential evaluation used to assess social security disability claims. *See* 20 C.F.R. § 404.1520(a)(4) (describing five-step process).[1]

The ALJ determined that Ms. Martinez had a number of medically determinable severe impairments, including two severe physical impairments—lumbar degenerative disc disease and history of right wrist fracture—and two severe mental impairments—affective disorder and anxiety disorder. The ALJ further found that Ms. Martinez's severe physical and mental impairments did not, individually or in combination, meet or equal the conclusively disabling impairments in the Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix I. As required by the sequential process, the ALJ then defined Ms. Martinez's residual functional capacity (RFC), finding that she could "perform light work . . . except that [she] can only occasionally bend, squat and kneel, cannot climb ladders/scaffolds, and can frequently handle/finger" and "requires unskilled work that involves no complex tasks . . . and cannot deal with the general public." Aplt. App., Vol. I at 22.

Based on the testimony of a vocational expert, the ALJ found that Ms. Martinez could not perform her past relevant work, but still retained the ability

---

[1] In this order and judgment, we cite to relevant regulations in 20 C.F.R. Part 404, which apply to claims for disability insurance benefits. We do not, however, include citations to the parallel provisions published in 20 C.F.R. Part 416, which apply to claims for supplemental security income.

to perform other work that existed in substantial numbers in the national economy and was therefore not disabled. The Appeals Council denied review of the ALJ's decision, and the district court affirmed. This appeal followed.

## II. STANDARD OF REVIEW

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted).

> Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance. We consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's.

*Id*. (citations and internal quotation marks omitted).

Moreover, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id*. (internal quotation marks omitted). "We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id*. (brackets and internal quotation marks omitted).

## III. ANALYSIS

### A. Opinion Evidence

Ms. Martinez argues that the ALJ's determination that she was not disabled is erroneous because he improperly weighed several medical opinions. We disagree.

The ALJ was required to consider all the medical source opinions regarding Ms. Martinez's claimed impairments—physical and mental. *See* 20 C.F.R. § 404.1527(c) ("Regardless of its source, [the ALJ] will evaluate every medical opinion [he] receive[s].").

Under § 404.1527(c)(2),

> [i]f [the ALJ] find[s] that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the ALJ] will give it controlling weight.

*See also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Conversely, "if the [treating physician's medical] opinion is deficient [because it is not well-supported or is inconsistent with other substantial evidence in the record], then it is not entitled to controlling weight." *Id.*

"Unless [the ALJ] give[s] a treating source's medical opinion controlling weight . . . , [the ALJ will] consider [six regulatory] factors in deciding the weight . . . [to] give to *any* medical opinion," § 404.1527(c) (emphasis added), including a treating source's opinion. In other words, "resolving the controlling weight issue does not end our review." *Watkins*, 350 F.3d at 1300 (internal quotation marks omitted). Instead, if the ALJ determines the treating source's opinion is not

4

entitled to controlling weight, the ALJ must consider the regulatory factors in § 404.1527(c)(2)-(6) to determine what weight to assign to the opinion.

> Those factors are: (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1300-01 (internal quotation marks omitted).

As an overarching principle, the ALJ should "[g]enerally . . . give more weight to the medical opinion of a source who has examined [the claimant] than to the medical opinion of a medical source who has not examined [the claimant]." § 404.1527(c)(1). Nonetheless, "[a]n opinion found to be an examining rather than treating medical-source opinion may be dismissed or discounted," so long as the ALJ bases the decision "on an evaluation of all the factors set out in [§ 404.1527(c)] and [he] . . . provide[s] specific, legitimate reasons for rejecting it." *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (internal quotation marks omitted).

## B. Physical Impairments

### 1. Dr. Gregg

Dr. Tammy Gregg was Ms. Martinez's treating physician. Between August 2011 and April 2015, Dr. Gregg periodically filled out check-box forms for Ms. Martinez's participation in a local work program. On these forms, Dr. Gregg consistently indicated, among other things, that Ms. Martinez could occasionally lift

5

ten pounds, but could never lift twenty-five pounds. In January 2015, Dr. Gregg completed a form at the request of Ms. Martinez's attorney indicating that Ms. Martinez could lift and carry five pounds occasionally, sit for four hours per day, and stand for no longer than two hours per day, among other restrictions.

The ALJ assigned "very little weight" to Dr. Gregg's opinions because they were inconsistent with the record and unsupported by objective findings. But the ALJ's analysis did not stop there. Although the ALJ did not specifically cite § 404.1527(c), he clearly had the regulatory factors in mind when he weighed Dr. Gregg's statements.

Section 404.1527(c)(3) provides: "The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that medical opinion." Further, "[t]he better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion." *Id*.

In this regard, the ALJ explained that there was no objective evidence to support Dr. Gregg's statements. For example, the ALJ noted that Dr. Gregg's check-box forms were not supported by objective findings and lacked detail. Further, the ALJ found that Dr. Gregg based her "extreme assessed limitations . . . on a thoracic sprain but she failed to cite any objective findings." Aplt. App., Vol. 1 at 24. Moreover, the ALJ noted that Ms. Martinez had only "mild restriction" in her activities of daily living. *Id*. at 22.

6

Section 404.1527(c)(4) provides: "Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." Relevant here, the ALJ noted that Dr. Gregg's severe restrictions did not jibe with the medical evidence because, among other things, "imaging of the thoracic spine and cervical spine have been normal or unremarkable," and Ms. Martinez's "back symptoms have been stable, with no radiation of pain." Aplt. App., Vol. 1 at 24. We also disagree with Ms. Martinez that the ALJ did not adequately explain how the record—as a whole—was inconsistent with Dr. Gregg's proposed restrictions. To the contrary, the ALJ detailed the medical notes and testing concerning Ms. Martinez's wrist and back problems and specifically found that Dr. Gregg's proposed restrictions "are not consistent with the record *as [a] whole* and are not supported by objective evidence." *Id*. (emphasis added). Instead, the ALJ found that "[l]ongitudinally, the medical record supports a limitation to light work with occasional bending, squatting and kneeling, and frequent handling/fingering." *Id*.

We conclude that the ALJ's reasons for affording Dr. Gregg's opinions "very little weight" are supported by substantial evidence.

**2. Dr. Susman**

A State agency consulting physician, Dr. Morris Susman, completed a Residual Functional Capacity Assessment, which was based on his review of the medical record. Dr. Susman concluded that Ms. Martinez could stand or walk for six hours and sit for six hours in a normal eight-hour workday, could perform postural

7

activities at least occasionally, and did not have limitations of her fine manipulation skills. The ALJ gave Dr. Susman's opinion "some weight," because it "is generally consistent with [the ALJ's assessment of Ms. Martinez's] residual functional capacity." *Id*. at 23.

First, Ms. Martinez argues that the ALJ formulated Ms. Martinez's RFC and only then did he search the record for evidence to support it. *See* 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."). We disagree. The ALJ discussed several pieces of evidence, including Dr. Susman's opinion, and formulated Ms. Martinez's RFC. While the wording is unartful, we are convinced there was no error.

Second, we agree with Ms. Martinez that the ALJ failed to specifically state the reasons for assigning more weight to Dr. Susman's opinion than to Dr. Gregg's opinions, or otherwise explain the weight he gave Dr. Susman's opinion. Nonetheless, we agree with the Commissioner that this omission does not require us to reverse.

State agency medical consultants are highly qualified experts in Social Security evaluation. *See* § 404.1513a(b)(1). Moreover, "an ALJ's failure to *weigh* a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity." *Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014) (emphasis added). *See also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) (same). Here, the ALJ's RFC finding

is consistent with Dr. Susman's opinion, with the exception of a limitation *favorable* to Ms. Martinez that Dr. Susman did not propose in his opinion.

## C. Mental Impairments

### 1. Dr. Wesley

Dr. Immaculate Wesley, a consultative psychologist, examined Ms. Martinez on one occasion. In her report, she noted her observations and results from several tests, and concluded that Ms. Martinez's "[s]ocial interaction is extremely impaired," and her "abilities as related to basic work activities appear impaired and most likely precluded due to the severity of her depression." Aplt. App., Vol. 2 at 480.

The ALJ gave "no weight" to Dr. Wesley's opinion, *id*. Vol. 1 at 24, however, because: (1) there was no evidence of psychiatric treatment or medications; (2) the body of Dr. Wesley's report did not support the level of impairment she suggested; (3) Dr. Irwin Matus, a State agency consultant, discounted Dr. Wesley's report because it was based on Ms. Martinez's self-reports and inconsistent with how she presented herself at the examination; and (4) Dr. Matus found only limited impairments.

Regarding the inconsistencies between Dr. Wesley's report and how Ms. Martinez presented herself, the ALJ noted that even though Ms. Martinez "cried throughout the examination[,] . . . her speech was of normal rate, rhythm and volume; thought processes were logical and coherent; thought content was free of delusions; and there were no disorders of perception exhibited." *Id*. at 25. "Additionally, [Ms. Martinez] was well oriented to all spheres, could name both the current and past

9

Presidents correctly, and was able to spell the word 'world' backward correctly." *Id*. The ALJ also noted that Dr. Wesley assessed Ms. Martinez with "[a] GAF score of 38,"[2] *id*. at 24, which Dr. Wesley said demonstrated "major impairment in all areas of functioning, including work, family relations, judgment, thinking and mood," *id*. Vol. 2 at 479. But the ALJ found that Ms. Martinez "report[ed] no problems getting along with family, friends, neighbors or others, and she gets along 'good' with authority figures." *Id*. Vol. 1 at 22.

As the examining psychologist, Dr. Wesley's opinion is presumptively entitled to more weight than a non-examining medical source. *See* § 404.1527(c)(1). And although an examining opinion may be dismissed or discounted, that determination must be based on an evaluation of the factors in § 404.1527(c)(2)-(6), and the ALJ "must provide specific, legitimate reasons for rejecting it." *Chapo*, 682 F.3d at 1291 (internal quotation marks omitted). The ALJ did not specifically mention the factors in § 404.1527(c)(2)-(6), but he clearly had them in mind when he found that Dr. Wesley's extreme opinion was not well-supported, inconsistent with the record as a whole, lacked explanation, and contradicted by how Ms. Martinez presented herself.

The parties agree that the ALJ could not ignore Dr. Wesley's opinion simply because it was based on Ms. Martinez's self-reports. *See Robinson v. Barnhart*,

---

[2] The Global Assessment of Functioning, or GAF score, "is a subjective determination based on a scale of 100 to 1 of the clinician's judgement of the individual's overall level of functioning." *Langley v. Barnhart*, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004) (internal quotation marks omitted).

366 F.3d 1078, 1083 (10th Cir. 2004) (per curiam) ("[A] psychological opinion may rest either on observed signs and symptoms or on psychological tests."). But as explained above, the ALJ gave several other legitimate reasons to discount Dr. Wesley's report.

We conclude that the ALJ's reasons for affording Dr. Wesley's opinion "no weight" are supported by substantial evidence.

## 2. **Dr. Matus**

Dr. Matus reviewed Dr. Wesley's report and the medical record and opined that Ms. Martinez's "[p]sychiatric condition does not preclude all work tasks. [Claimant] can perform lower end, moderately complex work tasks." Aplt. App., Vol. 1 at 79. Dr. Matus also disagreed with Dr. Wesley that Ms. Martinez was extremely impaired as to social interaction. The ALJ gave "some weight" to Dr. Matus's opinion. *Id.* at 24. Although Dr. Matus noted no limitations in social interaction, the ALJ limited Ms. Martinez "to unskilled work that involves no dealing with the general public." *Id.* at 25.

Ms. Martinez argues, and we agree, that the ALJ erred by failing to address any of the factors under § 404.1527(c)(2)-(6) in deciding what weight to give Dr. Matus's opinion. Nonetheless, we agree with the Commissioner that this error was harmless. As a State agency medical consultant, Dr. Matus is a highly qualified expert in Social Security evaluation. *See* § 404.1513a(b)(1). Moreover, the absence of a specific discussion is harmless if there is no inconsistency between the opinion and the ALJ's RFC assessment. *See Mays*, 739 F.3d at 578-79. *See also*

11

*Keyes-Zachary*, 695 F.3d at 1163.  Here, the ALJ's RFC finding is generally consistent with Dr. Matus's opinion.

## IV.  CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court

Monroe G. McKay
Circuit Judge