FILED
United States Court of Appeals
Tenth Circuit

June 5, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

CYNTHIA QUINTERO,

       Plaintiff-Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

       Defendant-Appellee.

No. 13-1396
(D.C. No. 1:12-CV-01849-WJM)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **McHUGH**, **PORFILIO**, and **O'BRIEN**, Circuit Judges.

Plaintiff-appellant Cynthia Quintero applied for Social Security disability and

Supplemental Security Income benefits (SSI) in 2009.  The Commissioner denied her

applications, and the district court affirmed the Commissioner's decision.  She then

appealed to this court.  The sole issue on appeal is whether the administrative law

judge (ALJ) who determined her claim properly evaluated the medical evidence

---

[*]      After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

concerning her alleged mental impairments.  Because the ALJ failed to provide

adequate and acceptable reasons for the weight he assigned to the medical opinions,

we reverse and remand for further proceedings.

## BACKGROUND

After the agency administratively denied her applications for benefits,

Ms. Quintero obtained a hearing before the ALJ.  The ALJ concluded she had severe

impairments including degenerative disc disease, tendinitis of the left shoulder,

diabetes, and depression.  But she further concluded the evidence showed

Ms. Quintero retained the residual functional capacity (RFC) to perform light work

> with the following limitations:  [she] would require simple, unskilled
> work with a specific vocational preparation (SVP) of one or two; should
> not work in close proximity to coworkers, meaning that the individual
> could not function as a member of a team; should have minimal direct
> contact with the public[.][1]

Admin. R., Vol. I at 12.

Given this RFC, the ALJ found Ms. Quintero could perform a significant

number of jobs in the national economy.  She therefore denied benefits at step five of

the sequential analysis.[2]

---

[1]    The ALJ also imposed certain specific physical restrictions as part of her RFC.
These are not at issue in this appeal, so we do not detail them here.

[2]    The Commissioner follows a five-step sequential evaluation process
to determine whether a claimant is disabled.  *See Williams v. Bowen*, 844 F.2d 748,
750-52 (10th Cir. 1988) (describing process).  The claimant bears the burden
of establishing a prima facie case of disability at steps one through four.  *See id.*
at 751 n.2.  If the claimant successfully meets this burden, the burden of proof shifts
to the Commissioner at step five to show the claimant retains a sufficient RFC to

(continued)

The record contains three medical opinions concerning the effect of Ms. Quintero's mental impairments on her ability to work. Brett Valette, Ph.D., a consulting psychiatrist, administered a mental status exam to Ms. Quintero on May 13, 2009. He noted her affect was sad. She reported feeling depressed, helpless, hopeless, and worthless. Dr. Valette concluded Ms. Quintero

> elicits symptoms of major depression, but is not being helped by medication. This is in response to losing her job and not being able to work and then feeling stuck, like she cannot improve herself because she does not have any money for her [rotator cuff] surgery. . . . She had some difficulties on the mental status examination with short-term memory, with serial 3's. She had trouble with general information. Her abstractions were good. Her proverbs were good. Her judgment and reasoning [were] adequate.

*Id.*, Vol. II at 429. He diagnosed her with major depression, noted moderate to severe psychosocial stressors, and assigned her a GAF score of 50.[3]

Based in large part on Dr. Valette's examination and findings, agency psychologist MaryAnn Wharry, Psy.D., prepared a psychiatric review technique form (PRT) and a mental RFC assessment of Ms. Quintero. On the PRT form, Dr. Wharry assigned Ms. Quintero "mild" difficulties in maintaining social functioning and

---

perform work in the national economy, given her age, education and work experience. *See id.* at 751.

[3] "The GAF is a 100-point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n.1 (10th Cir. 2012). A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* (internal quotation marks omitted).

"moderate" difficulties in maintaining concentration, persistence, or pace. *Id.* at 440. On the mental RFC assessment form, Dr. Wharry found her "moderately limited" in her ability "to understand and remember detailed instructions," "to carry out detailed instructions," "to maintain attention and concentration for extended periods," and "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." *Id.* at 444-45. Dr. Wharry explained Ms. Quintero's

> [s]ymptoms may interfere with completion of a normal workday or workweek or may cause inconsistent pace. However, when work does not require more than simple instructions, ordinary routines and simple work decision making, limitations of attendance and pace will not prevent the completion of a normal workday/workweek or significantly reduce pace. [Ms. Quintero] can perform at a consistent pace without an unreasonable number and length of rest periods when work demands are within [mental RFC] restrictions.

*Id.* at 446.

The third opinion in the file concerning the effect of Ms. Quintero's mental impairments on her ability to work came from José G. Vega, Ph.D. On June 20, 2009, he administered a mental status examination to Ms. Quintero. He noted she had difficulty performing serial 7s and with simple arithmetical tasks, but could count from 20 to 1 backwards without any errors. He stated he suspected she "functions within the low average range of intelligence" and noted she presented "with some difficulties with attention and concentration and some memory [deficits] which would seem to be related due to [sic] her depression and anxiety." *Id.* at 472.

- 4 -

Dr. Vega diagnosed Ms. Quintero with "Major Depression, Recurrent, Moderate"; "Posttraumatic Stress Disorder, Chronic," resulting from previous abuse she had suffered; and "Pain Disorder Associated with Both Psychological factors and a General Medical Condition." *Id.* at 473. He assigned her a GAF score of 50-55.[4] He concluded:

> As it relates to her functioning, the results of this evaluation would indicate that she would have difficulties in everyday life or work-like activities, particularly in the areas of social interaction, sustained concentration and persistence, as well as some memory, which would seem to be affected by her moderate to severe levels of depression and anxiety. She does have difficulty with adaptation and being able to adapt to situations.

*Id.*

Dr. Vega completed a mental RFC form, in which he assigned Ms. Quintero "moderate," "marked," or "moderate-to-marked" limitations in every category provided on the form. *Id.* at 468-69. His RFC form as completed included limitations not only on Ms. Quintero's abilities in the domains of "understanding and memory" and "sustained concentration and persistence," as Dr. Wharry's did, but also in the domains of "social interaction" and "adaptation." *Id.*

---

[4] A GAF score of 51-60 indicates "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Keyes-Zachary*, 695 F.3d at 1162 n.1 (internal quotation marks omitted).

In her decision, the ALJ considered and discussed this medical evidence. She made three somewhat inconsistent statements about Dr. Vega's mental status examination report and RFC form. First, she stated they "were not given controlling weight as [Dr. Vega] was not a treating source." *Id.*, Vol. I at 15. Second, she determined they were entitled to "little, if any weight" because they "were prepared at the behest of [Ms. Quintero's] counsel in anticipation of this hearing." *Id.* Finally, and inconsistently with the previous statement, she stated "to the extent that Dr. Vega's assessment was consistent with that of the independent consultative examiner [Dr. Valette], his assessment was given great weight." *Id.*

As for Dr. Valette's assessment, the ALJ discussed it in a single sentence providing no actual reason for assigning it any weight: "The assessment of Dr. Valette was given great weight as his suggested restrictions were incorporated in the residual functional capacity assessment above." *Id.*

Based on these evaluations, the ALJ concluded:

> Both Dr. Vega and Dr. Valette noted that claimant's depressive symptoms would cause some difficulties in the areas of social functioning[5] and concentration, persistence and pace. Therefore, the residual functional capacity assessment set forth above incorporated restrictions regarding these areas; after which it was determined that [Ms. Quintero] was able to work.

*Id.*

---

5    As previously noted, Dr. Wharry's mental RFC form, which was based on Dr. Valette's findings, did not impose a significant limitation on social interaction.

## DISCUSSION

### 1. Standard of Review

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

### 2. ALJ's Weighing of Conflicting Medical Opinions

The Commissioner's regulations require the ALJ to consider all medical opinions in the record. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). She must also discuss the weight she assigns to such opinions. *See id.* §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii) ("[T]he administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us."). The regulations identify a number of specific factors the ALJ should consider in deciding the weight to give to a medical opinion. *Id.* §§ 404.1527(c); 416.927(c).

Although there may be acceptable reasons in the record to discount Dr. Vega's opinions, the ALJ failed to articulate such reasons. First, the ALJ's observation that Dr. Vega was an examining rather than a treating physician was not a valid reason for

rejecting the opinion. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (ALJ's finding a physician's opinion is not entitled to the conclusive weight of a treating medical-source opinion "is not by itself a basis for rejecting [the opinion]—otherwise the opinions of consultative examiners would essentially be worthless, when in fact they are often fully relied on as the dispositive basis for RFC findings").

Nor was it proper for the ALJ to assign little, if any, weight to Dr. Vega's assessment because it was prepared at counsel's request for purposes of the hearing. This reasoning, without more, does not justify rejection of a medical opinion.[6] It implies a consulting examiner's opinion is necessarily less trustworthy when it is sought or obtained by the claimant, a position this court long ago rejected in the context of treating physicians' opinions. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1253 (10th Cir. 2002); *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987). Moreover, rejecting Dr. Vega's opinion on the ground the opinion was obtained by Ms. Quintero's counsel fails to follow the established legal rules for weighing medical opinions. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c) (setting forth appropriate factors for weighing medical opinions). And the record reveals no "exceptional basis in the facts of this case" for ignoring the general rule. *Frey*, 816 F.2d at 515.

---

[6] Although the ALJ actually stated she assigned the opinion "little, if any weight" rather than outright rejecting it, we have recognized such statements operate as the equivalent of a rejection of the opinion. *See Chapo*, 682 F.3d at 1291 (construing the ALJ's decision to assign little weight to an opinion as an effective rejection of it).

The ALJ's other finding concerning Dr. Vega's opinions contains a serious inconsistency. Notwithstanding the ALJ's global statement that Dr. Vega's opinions were entitled to little if any weight, she assigned great weight to those portions of it she found consistent with Dr. Valette's opinion. Certainly, the consistency of Dr. Vega's opinions with the record as a whole was a legitimate factor to be considered in evaluating the opinions. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); *id.* § 416.927(c)(4) (same). But here, the ALJ did not evaluate Dr. Vega's opinions against the record as a whole. She only compared them in conclusory fashion to Dr. Valette's opinion, and assigned great weight to portions of Dr. Vega's opinion—which she had previously rejected *in toto*—for no other reason than their agreement with Dr. Valette's opinion.

"An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). Granted, Dr. Vega's opinions were not entirely "uncontradicted," because they did not entirely agree with Dr. Valette's opinion. But this brings us to a second problem: the ALJ provided no valid reason for choosing Dr. Valette's opinion over Dr. Vega's in those instances where the opinions differed. *See Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) ("When there is conflicting medical evidence, the [Commissioner] must determine credibility and resolve the conflict." (internal quotation marks omitted)); *Reveteriano*

- 9 -

*v. Astrue*, 490 F. App'x 945, 947 (10th Cir. 2012) ("[T]o the extent there are differences of opinion among the medical sources, the ALJ must explain the basis for adopting one and rejecting another, with reference to the factors governing the evaluation of medical-source opinions set out in 20 C.F.R. §§ [404.1527(c)] and [416.927(c)]."). Nor did the ALJ provide any reason whatsoever for the great weight she assigned to Dr. Valette's opinion. In sum, the ALJ provided us with no basis for judicial review of the relative weights she assigned to these opinions.

Finally, because of the significant differences between the opinions of Drs. Vega and Valette, and between the mental limitations Dr. Vega found and those accepted by the ALJ, this error cannot be considered harmless. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1165 (10th Cir. 2012) (finding error harmless where ALJ failed to assign weight to medical opinion, but where limitations assigned by physician were not inconsistent with those found by ALJ).[7] We note the Commissioner attempts to rehabilitate the ALJ's decision by offering belated justifications for the weight assigned to the opinions, but the problems cannot be fixed on appeal and must be repaired by the ALJ on remand. *See Carpenter v.*

---

[7]    The Commissioner argues Ms. Quintero has failed to challenge the ALJ's separate finding she was not a credible witness. The ALJ's adverse credibility finding, however, does not demonstrate the error Ms. Quintero did raise, concerning the medical evidence, was harmless. Even given her credibility assessment, the ALJ concluded, based on all the evidence, Ms. Quintero's mental impairments would cause her restrictions in the areas of social functioning and concentration, persistence, and pace. The degree to which these and possibly other mental restrictions would affect her ability to work required a proper analysis of the medical evidence, which the ALJ failed to perform.

*Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) ("Judicial review is limited to the reasons stated in the ALJ's decision; the magistrate judge should not have supplied possible reasons for rejecting a physician's opinion in order to affirm."). We must therefore remand to the ALJ for a proper evaluation of the opinions of Drs. Vega and Valette.

The judgment of the district court is reversed and the case is remanded to the district court with instructions to remand to the Commissioner for further proceedings in accordance with this order and judgment.

Entered for the Court


Terrence L. O'Brien
Circuit Judge