**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 4, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

PATRICIA L. RINGGOLD,

     Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

     Defendant - Appellee.

No. 15-6145
(D.C. No. 5:14-CV-00524-W)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **PORFILIO**, and **BALDOCK**, Circuit Judges.
_____

Patricia L. Ringgold appeals from the district court's order affirming the

Commissioner's decision denying her applications for Social Security disability and

Supplemental Security Income (SSI) benefits. After the agency denied her

applications she received a de novo hearing before an administrative law judge

(ALJ). The ALJ determined that she was not disabled. The Appeals Council denied

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

review, making the ALJ's decision the Commissioner's final decision. The district court affirmed, and she appealed.

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "If the ALJ failed to apply the proper legal test, reversal is appropriate apart from a lack of substantial evidence." *Snyder v. Shalala*, 44 F.3d 896, 898 (10th Cir. 1995).

The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing process). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. *See id.* at 751 n.2. If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains a sufficient RFC to perform work in the national economy, given her age, education and work experience. *See id.* at 751.

At step one of the analysis, the ALJ found Ms. Ringgold had not engaged in substantial gainful activity since October 11, 2009, the alleged onset date. At step two, she had severe mental impairments, including generalized anxiety disorder,

2

major depressive disorder, bipolar disorder, PTSD [post-traumatic stress disorder] (provisional), and ADHD [attention deficit hyperactivity disorder] (provisional).  But at step three, she did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.

At step four, the ALJ determined that Ms. Ringgold had the RFC

> to perform a full range of work at all exertional levels, but with the following nonexertional limitations:  [she] can understand, remember, and carry out simple, routine, and repetitive tasks.  [She] can respond appropriately to supervisors, co-workers, and usual work situations, but have [only] occasional contact with the general public.

Aplt. App., Vol. II at 18.

Given this RFC, Ms. Ringgold was unable to perform any of her past relevant work.  But at step five, considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform.  Therefore, the ALJ concluded, she was not disabled.

Ms. Ringgold raises a single issue for our review.  She contends that the ALJ failed to properly evaluate the opinion of Stephanie Crall, Ph.D., a consulting psychologist who examined Ms. Ringgold and prepared an opinion concerning her mental capacity to perform work-related activities.  Because we agree that the ALJ failed to adequately evaluate the opinion, and because the error was not harmless, we reverse and remand for further proceedings.

**1. ALJ's Evaluation of Dr. Crall's Opinion**

Dr. Crall conducted an in-person mental status examination of Ms. Ringgold. Her opinion is therefore considered an "examining medical-source opinion." *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012); *see also* 20 C.F.R. §§ 404.1527(c)(1); 416.927(c)(1). Such opinions are "given particular consideration" in that they are "presumptively entitled to more weight than a doctor's opinion derived from a review of the medical record." *Chapo*, 682 F.3d at 1291. An examining medical-source opinion "may be dismissed or discounted, of course, but that must be based on an evaluation of all of the factors set out in the . . . regulations and the ALJ must provide specific, legitimate reasons for rejecting it." *Id.* (internal quotation marks omitted). The relevant factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); *Chapo*, 682 F.3d at 1291 (noting analysis under these factors applies to examining medical-source opinions); *see also* 20 C.F.R. §§ 404.1527(c); 416.927(c).

The ALJ is not required to mechanically apply all of these factors in a given case. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). It is sufficient if

4

he "provide[s] good reasons in his decision for the weight he gave to the [physician's] opinions." *Id.* But the duty to supply such reasons is the ALJ's; neither the Commissioner nor the courts may supply post-hoc reasons that the ALJ did not provide. *See Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

### A. Dr. Crall's Opinion

Upon examination, Dr. Crall found Ms. Ringgold to be alert, oriented, and cooperative. Her speech was logical, goal-directed, and fully intelligible. Although Ms. Ringgold stated that she was feeling some frustration, her affect was appropriate. Dr. Crall found the information she provided valid and reliable.

Ms. Ringgold told Dr. Crall that she experienced "a depressed mood on most days, irritability, social withdrawal, loss of interest in previously enjoyed activities, poor concentration, feelings of worthlessness, and suicidal ideation." Aplt. App., Vol. III at 537. She experienced anxiety-related symptoms as well, including a tendency to worry obsessively; an inability to control her worrying; nervousness; vomiting; and picking at her skin when worried, which had resulted in the presence of visible sores on her arms. She had been hyperactive as a child, and as an adult continued to experience difficulty waiting her turn, talked excessively and loudly, and had significant trouble sustaining attention. She took a number of medications for these conditions, was not currently participating in outpatient counseling (though

5

she had done so in the past), and had no history of inpatient psychiatric hospitalizations. Ms. Ringgold also discussed her history of illegal drug use.

Ms. Ringgold had performed many different jobs in the past. Her longest job was for more than three years in a customer service position for Southwestern Bell. "When asked to explain the reason for her current inability to obtain/maintain employment, [she] cited the interference of emotional problems, verbal outbursts, concentration impairments, and forgetfulness." *Id.* at 538.

Dr. Crall noted that Ms. Ringgold's social isolation was "apparent." *Id.* Ms. Ringgold told Dr. Crall that "she was able to complete personal hygiene and general housekeeping tasks independently, *if not too depressed to do so*." *Id.* (emphasis added).

Turning to her diagnostic impressions, Dr. Crall noted that she had based them on Ms. Ringgold's clinical presentation and report of history and symptoms. She had made no attempt to verify the history reported to her by Ms. Ringgold. Dr. Crall diagnosed her with Major Depressive Order, Moderate; Bipolar Disorder (By Report); Generalized Anxiety Disorder; Posttraumatic Stress Disorder (Provisional); Attention-Deficit/Hyperactivity Disorder (Provisional); and Amphetamine Abuse (By History).

Dr. Crall stated that Ms. Ringgold's "ability to engage in work-related mental activities, such as understanding and remembering and to persist at such activities

6

was likely adequate for simple and some complex tasks." *Id.* at 540. But her mental impairments and lack of education "likely interfered with her ability to obtain and maintain competitive employment." *Id.*

Dr. Crall completed a "Medical Source Statement of Ability to do Work-Related Activities (Mental)." *Id.* at 541. On this form she checked boxes indicating that Ms. Ringgold would have "Mild" restrictions in understanding, carrying out, and making judgments concerning simple instructions and decisions. *Id.* But she would have "Marked" restrictions in her ability to understand, carry out, and make judgments concerning complex instructions and decisions. *Id.*

Turning to her social functioning, Dr. Crall opined that Ms. Ringgold would have "Marked" restrictions in her ability to "Interact appropriately with the public," "Interact appropriately with supervisor(s)," "Interact appropriately with co-workers," and "Respond appropriately to usual work situations and to changes in a routine work setting." *Id.* at 542. She identified the factors supporting this assessment as "Depression, anxiety, irritability, concentration problems, [and] history of verbal outbursts." *Id.*

### 2. The ALJ's Evaluation

In his decision, the ALJ stated that he gave Dr. Crall's opinion "little weight," thus effectively rejecting it. *See Chapo*, 682 F.3d at 1291 (noting that ALJ's decision

7

"according little weight to" physician's opinion effectively rejected the opinion).

He discussed the opinion as follows:

> On February 7, 2013, the claimant underwent a consultative mental status examination by Stephanie Crall, Ph.D. The claimant reported that she was able to complete personal hygiene and general housekeeping tasks independently, if not too depressed. The claimant reported that she used methamphetamine in 2008 for six months (Exhibit 13F, p. 2). She was diagnosed with major depressive disorder, moderate; bipolar disorder (by report); generalized anxiety disorder; posttraumatic stress disorder (provisional); attention-deficit/hyperactivity disorder (provisional); and amphetamine abuse (by history).
>
> The claimant reported to Dr. Crall in February 2013 that she used methamphetamine in 2008 for six months. There was no mention of marijuana usage (Exhibit 13F, p. 2). However, the claimant reported to Dr. Repanshek in September 2010 that she used methamphetamine for the last three years and smoked marijuana daily (Exhibit 3F, p. 2). The claimant's inconsistent statements diminish her credibility.
>
> . . .
>
> On February 7, 2013, Dr. Crall provided that the claimant's ability to engage in work-related activities, such as understanding and remembering and to persist at such activities was likely adequate for simple and some complex tasks. She has marked limitations in understand[ing], remembering and carrying out complex instructions; the ability to make judgments on complex work-related decisions; interacting appropriately with the public, supervisors, and with coworkers; and responding appropriately to usual work situations and to changes in routine work setting. She has mild limitations in understanding, remembering, and carrying out simple instructions; and the ability to make judgments on simple work-related decisions (Exhibit 13F). *The Administrative Law Judge provides little weight to this opinion; however, the claimant would not be able to perform semi-skilled work. She would be able to sustain unskilled work based on consideration of the medical evidence of record and the claimant's reported activities of daily living.*

Aplt. App., Vol. II at 21, 23 (emphasis added).

8

In the last two sentences quoted above, the ALJ stated that Ms. Ringgold could do unskilled work based on the medical evidence and her daily activities. We are uncertain whether this statement was intended to provide a reason for assigning Dr. Crall's opinion little weight. If it was, this conclusory reasoning, which did not explain how or why the specific limitations in Dr. Crall's opinion are inconsistent with the medical evidence or with Ms. Ringgold's daily activities, was inadequate to explain the ALJ's rejection of the opinion.

As noted, Dr. Crall opined that Ms. Ringgold had "marked" restrictions on dealing with the public, co-workers, and supervisors, and in her ability to respond appropriately to usual work settings and to changes in a routine work setting. The ALJ's RFC assessment limited Ms. Ringgold's interaction with the public but otherwise did not reflect these "marked" limitations.

### 3. The Commissioner's Arguments

The Commissioner attempts to rescue the ALJ's decision by reading into it reasons for assigning Dr. Crall's opinion little weight. We find the Commissioner's arguments, most of which rely on post-hoc reasoning, unpersuasive. First, she notes the ALJ's general statement "that he considered all the medical opinions under 20 C.F.R. § 404.1527, SSR 96-2p, 96-5p, and 96-6p." Aplee Br. at 22. This, of course, is mere boilerplate and cannot by itself satisfy the ALJ's burden.

9

The Commissioner next relies on the ALJ's recitation that Dr. Crall reported that Ms. Ringgold could "complete personal hygiene and general housekeeping tasks independently." Aplt. App., Vol. II at 21. But the Commissioner leaves off Dr. Crall's qualification, "if not too depressed." *Id.* More importantly, contrary to the Commissioner's argument, the ALJ did not make a further specific finding that "Dr. Crall's extreme limitations were not consistent with Ms. Ringgold's activities." Aplee. Br. at 25. He just concluded that she would be able to sustain unskilled work.

The Commissioner then cites Ms. Ringgold's inconsistent statements to Dr. Crall and to other providers about her drug use. *Id.* at 22. The ALJ noted these inconsistent statements in his decision. Aplt. App., Vol. II at 21. But he did not identify them as a reason for assigning little weight to Dr. Crall's opinion. Instead, he concluded that "[t]he claimant's inconsistent statements *diminish her credibility*." *Id.* (emphasis added).

The Commissioner next argues that Dr. Crall's opinion is entitled to little weight because "her impression of Ms. Ringgold was based on [Ms. Ringgold's] clinical presentation as well as her reported history and symptoms [and] she believed Ms. Ringgold was being honest with her [but] she had made no attempt to verify the history as described by Ms. Ringgold." Aplee. Br. at 23-24 (internal quotation marks omitted). The Commissioner may have a good point about the basis for Dr. Crall's opinion. But it is not a point that the ALJ made in assessing the opinion.

10

The same is true of several of the other observations in the Commissioner's brief: that "Dr. Crall's mental status examination yielded mostly normal results," *id.* at 24; that "only a portion of Dr. Crall's opinion was supported by the medical evidence of record," *id.*; and that "the more restrictive portions of Dr. Crall's opinion were inconsistent with the record as a whole," *id.* These were points that the ALJ perhaps *could* have made, but did not.

The Commissioner also argues that Dr. Crall's opinion was entitled to little weight because "every other medical source opinion in the record, aside from Dr. Crall, found that Ms. Ringgold was capable of functioning at a level greater than the ALJ's [RFC] assessment." *Id.* at 25. Again, the ALJ did not expressly compare Dr. Crall's opinion concerning Ms. Ringgold's social functioning to those of the other physicians, so this also is a post hoc argument. Also, the reviewing physicians who provided these opinions did not examine Ms. Ringgold, and Dr. Crall did, so the ALJ needed to provide good reasons sufficient to overcome the presumption that their opinions were entitled to less weight than Dr. Crall's, *see Chapo*, 682 F.3d at 1291, which he did not.

Finally, the Commissioner argues that because (1) the ALJ found that Ms. Ringgold could perform unskilled work, (2) there are enough unskilled jobs in the national economy, and (3) unskilled jobs involve working with "things" rather than "people," any failure to discuss her social limitations was essentially harmless.

But although a limitation to unskilled work sometimes may account for a claimant's mental limitations, it typically does not. *See id.* at 1290 n.3 (noting that "[w]hile the jobs cited by the VE happen to be unskilled, that just accounted for issues of skill transfer, not impairment of mental functions—which are not skills but, rather, general prerequisites for most work at any skill level" (internal quotation marks omitted)). Here, the fact that Ms. Ringgold would be working with "things" does not clearly and obviously eliminate the problem caused by her alleged marked inability to get along with supervisors or co-workers. Nor did the ALJ make a finding to that effect.

## 4. Context of the Error

Finally, we find it helpful to mention three features that underline the significance of the ALJ's error and demonstrate why it was not harmless in the particular context of this case. First, the ALJ sought Dr. Crall's opinion only after a prior remand from the Appeals Council. The Appeals Council ordered the ALJ to obtain additional evidence concerning Ms. Ringgold's medically determinable impairments, including, "if warranted and available, appropriate consultative examinations with psychological testing and medical source statements about what the claimant can still do despite the impairments." Aplt. App., Vol. II at 125. The ALJ was also specifically instructed to "explain the weight given to [the] opinion evidence." *Id.* The Appeals Council thus expressed particular concern about the need for an adequate development of the record in this case, with proper discussion

12

of the medical opinion evidence, including opinion evidence concerning Ms. Ringgold's mental impairments.

Second, at the hearing, the ALJ asked the vocational expert (VE) "[i]f someone had marked limitations in the ability to interact appropriately with the public/supervisors/coworkers, and to respond appropriately to usual work situations and to . . . changes in the routine work setting, would there be any jobs available?" *Id.* at 59-60. The VE responded that there would not. *Id.* But the ALJ did not include these marked limitations in his RFC assessment, leading him to conclude that Ms. Ringgold could perform work that existed in sufficient numbers in the national economy.

Finally, the record contains a significant amount of evidence of Ms. Ringgold's longstanding history of difficulties in remaining employed due to conflicts with supervisors, co-workers, and the public. This evidence details significant episodes where rage or other inappropriate emotional responses affected her ability to perform job duties or to maintain employment. The ALJ found that Ms. Ringgold's statements concerning the limiting effects of her symptoms were not entirely credible. But he did not discount the objective evidence of her work history, or the reasons that she gave for leaving multiple jobs that she seems to have been physically capable of performing. Although we may not reweigh this evidence, *see,*

13

*e.g.*, *Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014), it does help illustrate why the ALJ's error was not harmless in the context of this case.

### 5. Conclusion

The ALJ failed to properly evaluate Dr. Crall's medical opinion. The error was not harmless. The district court's judgment in favor of the Commissioner is therefore reversed, and this case is remanded to the district court with instructions to remand to the Commissioner for further proceedings, including a proper evaluation of Dr. Crall's opinion, in accordance with this order and judgment.

Entered for the Court


John C. Porfilio
Circuit Judge

14