**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 31, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DONA MARIE HARROLD,

    Plaintiff - Appellant,

v.

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration, [*]

    Defendant - Appellee.

No. 17-5037
(D.C. No. 4:15-CV-00616-PJC)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[**]
_____

Before **TYMKOVICH**, Chief Judge, **BALDOCK** and **HOLMES**, Circuit Judges.
_____

    Dona Harrold appeals from the district court's judgment affirming the denial

of her application for social security disability benefits. Exercising jurisdiction under

42 U.S.C. § 405(g) and 28 U.S.C. § 1291, we reverse and remand for further

consideration by the agency.

_____

    [*] Pursuant to Fed. R. App. P. 43(c)(2) Carolyn Colvin has been replaced as
Acting Commissioner of Social Security by Nancy A. Berryhill.

    [**] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

## BACKGROUND

Ms. Harrold applied for disability insurance benefits and supplemental security income, asserting she was disabled due to severe migraines, bipolar and anxiety disorders, lower back issues and fibromyalgia. After her applications were denied initially and on reconsideration, an administrative law judge (ALJ) considered her claims and issued a decision finding Ms. Harrold was not disabled at the fifth and final step of the sequential evaluation used to assess social security disability claims. *See* 20 C.F.R. § 404.1520(a)(4) (describing five-step process).[1]

In reaching this decision, the ALJ found Ms. Harrold had a number of medically determinable, severe impairments, including two severe mental impairments, "bipolar I disorder, mixed with psychotic features" and "panic disorder with agoraphobia." Aplt. App. Vol. II, at 89. He found further that Ms. Harrold's severe physical and mental impairments did not, individually or in combination, meet or equal the conclusively disabling impairments in the Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1. As required by the sequential process, the ALJ then defined Ms. Harrold's residual functional capacity (RFC), finding with respect to her mental impairments that she could "understand, remember, and carry out simple tasks," "relate to others on a superficial work basis," "adapt appropriately

---

[1] Unless otherwise noted, all C.F.R. citations in this decision are to the 2016 edition, which reflect the relevant regulations as they existed when the ALJ issued his decision. In addition, we have cited to relevant regulations in 20 C.F.R. Part 404, which apply to claims for disability insurance benefits, but have not included citations to the parallel provisions published in 20 C.F.R. Part 416, which apply to claims for supplemental security income.

2

to a work situation," but "could not work with the general public." Aplt. App. Vol. II, at 91. Based on this RFC, the ALJ found Ms. Harrold was not able to perform her past relevant work, but that she retained the ability to perform other work that existed in substantial numbers in the national economy. The latter, determinative finding was based on testimony by a vocational expert (VE) who testified at the evidentiary hearing based on the RFC found by the ALJ. The Appeals Council denied review of the ALJ's decision, and the district court affirmed. This appeal followed.

## ANALYSIS

Because the Appeals Council denied Ms. Harrold's request for review, the ALJ's decision that Ms. Harrold was not disabled is the Commissioner's final decision. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). "We review the district court's decision de novo and independently determine whether the ALJ's decision is free from legal error and supported by substantial evidence." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

On appeal, Ms. Harrold raises three issues, all relating to whether the ALJ complied with the relevant legal standards in evaluating Ms. Harrold's mental impairments.[2] We address each issue in turn.

---

[2] Ms. Harrold does not challenge the ALJ's findings with respect to her physical impairments.

## A. Opinion Evidence

The ALJ was required to consider opinions received from medical sources regarding Ms. Harrold's claimed impairments, and to evaluate and weigh these opinions based on six regulatory factors. *See* 20 C.F.R. § 404.1527(c); SSR 06-03p, 2006 WL 2329939, at *4-5 (Aug. 9, 2006);[3] *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007). He was further required to "provide specific, legitimate reasons," *Chapo*, 682 F.3d at 1291 (internal quotation marks omitted), if he decided to discount or dismiss an opinion from an acceptable medical source, *see id.*, and to "explain the weight given to opinions from [other medical] sources, or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case,"[4] SSR 06-03p, at *6; *see also Frantz*, 509 F.3d at 1302. Ms. Harrold argues the ALJ failed to comply with these legal standards in evaluating, or failing to evaluate, the four medical source opinions in the record regarding Ms. Harrold's mental impairments. Upon review of these opinions, the ALJ's decision and the relevant legal standards, we agree.

---

[3] The Social Security Administration rescinded SSR 06-03p in March 2017, when it added the policies it contained to 20 C.F.R. § 404.1527, which applies to claims, like the one before us, that were filed before March 27, 2017. *See* 82 Fed. Reg. 15263 (Mar. 27, 2017); 82 Fed. Reg. 5844, 5854-55 (Jan. 18, 2017); 20 C.F.R. § 404.1527(f) (2017).

[4] "Acceptable medical sources" include licensed physicians and psychologists. SSR 06-03p, at *1. Non-acceptable medical sources are all health care providers who do not qualify as "acceptable medical sources." *Id.* at *2. An opinion from a non-acceptable medical source may outweigh the medical opinion of an acceptable

(continued)

4

### 1. Dr. Denise LaGrand

Dr. LaGrand, a licensed clinical psychologist, performed a mental consultative examination of Ms. Harrold. In her examination report, Dr. LaGrand diagnosed Ms. Harrold as suffering from "Bipolar II Disorder" and "PTSD, with acute exacerbations similar to panic attacks." Aplt. App. Vol. IV, at 570. She assessed a Global Assessment of Functioning (GAF) score of 45, *id.*, indicating she believed Ms. Harrold had serious mental symptoms or impairments, *see Langley v. Barnhart*, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004) ("A GAF score of 41–50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job.") (quoting American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders ("DSM-IV") 32 (Text Revision 4th ed. 2000)).[5] Dr. LaGrand further opined in her "Diagnostic Impression/Functional Assessment" that while Ms. Harrold's "ability to attend and process low-level tasks is adequate," "she is unlikely at this time to be able to work without significant interference from psychological symptoms, primarily anxiety." Aplt. App. Vol. IV, at 569.

---

medical source. *Id.* at *5. Unless otherwise noted, all of the medical sources who provided opinions regarding Ms. Harrold's mental impairments are acceptable medical sources.

[5] "The GAF is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" *Langley*, 373 F.3d at 1122 n.3 (quoting DSM-IV at 32). GAF scores prepared by an acceptable medical source, such as Dr. LaGrand, qualify as medical opinions. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012).

The ALJ mentioned Dr. LaGrand's examination in his determination, but did not expressly evaluate or weigh her opinion regarding Ms. Harrold's mental status and ability to function. He nonetheless appears to have incorporated Dr. LaGrand's opinion regarding Ms. Harrold's ability to perform low-level tasks in his RFC, *see* Aplt. App. Vol. II, at 91 (reporting Ms. Harrold "could understand, remember, and carry out simple tasks"), but fails to mention her further opinion that Ms. Harrold was unlikely to be able to perform this or other work without significant interference from psychological symptoms. He also noted but did not address Dr. LaGrand's GAF assessment in his determination.

It is well-established that "an ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (internal quotation marks and brackets omitted). As noted above, the Social Security regulations also required the ALJ to evaluate and describe the weight he ascribed to Dr. LaGrand's opinion. *See* 20 C.F.R. § 404.1527(c). The ALJ's failure to evaluate and weigh Dr. LaGrand's opinion in full, and to explain his reasons for rejecting portions of her opinion while apparently accepting other portions, was therefore error under the law of this circuit and relevant Social Security regulations. *See id.*; *Chapo*, 682 F.3d at 1291-92.

## 2. State agency psychologists

The record also includes medical source opinions by two state agency reviewing psychologists, Drs. Ron Cummings and Lisette P. Constantin. In their separate Mental Residual Functional Capacity Assessments, both psychologists

6

opined that Ms. Harrold's ability to perform sustained work activities was moderately impaired in a number of ways relating to the categories of understanding and memory, sustained concentration and persistence, social interaction and adaptation. As directed in the form each used, they also recorded their "actual mental residual functional capacity assessment" of Ms. Harrold in narrative form in explanatory text boxes following each category, and provided additional comments in a separate "MRFC-Additional Explanation" box. Aplt. App. Vol. II, at 137-39, 168-70.

The ALJ did not mention or expressly evaluate or weigh Drs. Cummings' and Constantin's opinions in his determination. It is apparent, however, that he considered their opinions because his mental RFC for Ms. Harrold almost exactly tracks the portion of Drs. Cummings' and Constantin's mental RFC assessments that was included in the "MRFC-Additional Explanation" section of their forms, while also including a limitation found in the "social interaction limitations" narrative box in both of their forms. *Compare id.* at 170 (reporting Dr. Constantin's opinion that Ms. Harrold "can understand, remember, and carry out simple and some complex tasks," "relate to others on a superficial basis," and "adapt appropriately to a work situation," but "[m]ay show limited tolerance for frequent, recurrent contact with the general public"), and *id.* at 139 (reporting same opinions by Dr. Cummings), *with id.* at 91 (finding as part of ALJ's RFC for Ms. Harrold that she "could understand, remember, and carry out simple tasks," "relate to others on a superficial work basis," "adapt appropriately to a work situation," but "not work with the general public").

The ALJ does not address or explain his reasoning for disregarding other portions of the agency psychologists' reports, however, most notably their opinions in the "sustained concentration and persistence" section of their mental RFC assessments that while "[Ms. Harrold's] mood issues may cause difficulties with tasks involving sustained focus and complex mental demands . . . . [she] remains mentally capable of understanding and carrying out instructions and assignments *in a structured setting*, in an appropriate time frame." *Id.* at 138-39, 169 (emphasis added). The inclusion of the term "in a structured setting" by both psychologists qualifies their opinion of Ms. Harrold's ability to perform these mental functions but is not addressed by the ALJ.[6] As with the ALJ's consideration of Dr. LaGrand's opinion, the ALJ's failure to explain why he rejected this qualification on Ms. Harrold's ability to understand and carry out instructions and assignments violates the rule that an ALJ may not pick and choose from an uncontradicted medical opinion without explaining the basis for crediting some portions of the opinion but not others. *See Chapo*, 682 F.3d at 1292.

---

[6] The Commissioner argues this portion of the agency psychologists' opinions is of no consequence because it is not included in Section III of form SSA-4734-F4-SUP. We need not address the merits of this argument, however, because Drs. Cummings and Constantin did not use this form in assessing and recording their opinions of Ms. Harrold's mental RFC. The Commissioner's further argument that the doctors' reference to "structured settings" is meaningless surplusage is unpersuasive on its face. As the Commissioner acknowledges, these agency psychologists are "experts in Social Security disability evaluation," Aplee. Br. at 23, and thus would be unlikely to include meaningless terms in their mental RFC assessment.

8

### 3. Mr. Robert Blasdel

In contrast to his handling of Dr. LaGrand's and the agency psychologists' opinions, the ALJ expressly considered the fourth medical source opinion concerning Ms. Harrold's mental impairments, a form completed and signed by Robert Blasdel, a licensed behavioral health practitioner who saw Ms. Harrold regularly as her counselor at Grand Lake Mental Health Center (GLMH). In this form, Mr. Blasdel provided his opinion regarding the amount of time Ms. Harrold could sustain 13 work-related mental activities "over a normal 8-hour workday on a regular and continuous basis, week after week." Aplt. App. Vol. IV, at 619-20. His conclusion was that while Ms. Harrold would not be able to understand and remember work procedures and simple and detailed instructions 10 or 20 percent of the time, she was not capable of performing most of the other listed work-related mental activities 50 percent or more of the time. These more limited activities included the ability to: (i) "maintain attention and concentration for extended periods of time in order to perform simple tasks"; (ii) adhere to a schedule; (iii) perform at a consistent pace; (iv) "handle normal job stress"; and (v) accept instructions and criticism from supervisors. *Id.*

The ALJ reported he gave Mr. Blasdel's opinions "little to no weight" in determining Ms. Harrold's mental RFC for three reasons. *Id.* Vol. II, at 94. First, he stated the form used to report these opinions was "not calculated to produce a fair assessment from the source" because the "terms and definitions" used, especially the use of numerical percentages to report the time Ms. Harrold could not perform the

9

work-related mental activities on a sustained basis in a workday, differed from those used in 20 C.F.R. § 404.1520a(c)(4). Aplt. App. Vol. II, at 94. The cited regulation, however, does not pertain to determination of an applicant's mental RFC, but rather refers to a more summary technique used earlier in the sequential evaluation process to help determine whether the applicant's mental impairments qualify as conclusively disabling under the Listing of Impairments.[7] *See* 20 C.F.R. § 404.1520a(a); SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996); *Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013). "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment" than what is described in this regulation. SSR 96-8p, at *4. That the mental activities Mr. Blasdel evaluated are appropriate to this more detailed RFC assessment is demonstrated by the fact that they are consistent with or in many cases identical to the specific mental activities evaluated by the agency psychologists in their assessment of Ms. Harrold's mental RFC. *Compare* Aplt. App. Vol. IV, at 619-20 (Blasdel form), *with id.* Vol. II, at 138-39, 168-70 (Drs. Cummings' and Constantin's mental RFC assessments). The Commissioner has also not directed us to any authority supporting the ALJ's apparent assumption that a particular format must be used in reporting a medical source opinion regarding mental impairments. That the format and terms used in Mr. Blasdel's form differ from and provide more detail than those set forth in the

[7] This technique involves using a five- or four-point scale to rate the applicant's degree of limitation in four broad functional areas. *See* 20 C.F.R. § 404.1520a(c)(3), (4); *Wells v. Colvin*, 727 F.3d 1061, 1068 (10th Cir. 2013).

10

regulation cited by the ALJ was not, therefore, a legitimate reason for him to dismiss Mr. Blasdel's opinion in assessing Ms. Harrold's mental RFC.

To the extent that the ALJ is asserting, as he did at Ms. Harrold's hearing, that the form was too confusing to follow, we note that the VE had little difficulty comprehending the form, as she testified after reviewing it that the limitations it reported were "very serious," *id.* Vol. II, at 123, and that a "marked limitation," that is a limitation that was more than moderate but less than extreme, *see* 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(C), in each of the mental activities the form reported Ms. Harrold could not perform 50 percent or more of the time would eliminate competitive work, Aplt. App. Vol. II, at 123. It is also not apparent to us why a medical opinion regarding the amount of time a person can or cannot perform work-related mental activities in a workday or workweek is inherently confusing or suspect. The Commissioner routinely uses and accepts time-based metrics to assess and describe an applicant's physical limitations in an RFC, *see, e.g.*, SSR 83-10, 1983 WL 31251, at *5-6 (1983) (in defining the physical limitations of sedentary and light work, explaining that "occasionally" means "up to one-third of the time" and "frequently" means "one-third to two-thirds of the time"), and the ALJ in fact reported Ms. Harrold's ability to perform certain physical activities in her RFC in terms of the hours in the work day that she was capable of performing them, *see* Aplt. App. Vol. II, at 91. Neither the ALJ nor the Commissioner have explained why the amount of time a person can or cannot perform work-related mental functions in an 8-hour day on a sustained basis should be treated differently.

11

The ALJ also reported that he rejected the opinions stated on the form because the form was co-signed by Dr. John Mallgren, a GLMH physician who was not on record as treating Ms. Harrold. This is not a legitimate reason to discount the opinions stated on the form, however, because there is no question that Mr. Blasdel, though not an "acceptable medical source," was still a treating medical source whose opinions should have been evaluated and weighed according to the regulatory factors set out at 20 C.F.R. § 404.1527(c). *See* SSR 06-03p, at \*4-5, \*6; *see also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) (stating ALJ was required to evaluate and weigh Mr. Blasdel's opinion regarding claimant's mental impairments). In fact, the Social Security Administration has affirmed that opinions from such non-acceptable medical sources "are important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06-03p, at \*3.

Finally, the ALJ reported that he discounted the opinions on the form because they were "not supported by the treatment notes from Grand Lake Mental Health." Aplt. App. Vol. II, at 94. This is a facially valid reason for not crediting Mr. Blasdel's opinions. *See* 20 C.F.R. § 404.1527(c)(3), (4) (identifying supportability and consistency with the record as factors in evaluating and weighing a medical source opinion); *Langley*, 373 F.3d at 1122. The ALJ provided no explanation for this conclusion, however, and we found no obvious inconsistencies between Mr. Blasdel's opinion and the GLMH treatment notes for Ms. Harrold in our review. Because the ALJ failed to explain why the GLMH treatment notes did not support Mr. Blasdel's opinion, "[the ALJ's] reasons for rejecting that opinion are not

12

sufficiently specific to enable this court to meaningfully review his findings."[8]

*Langley*, 373 F.3d at 1123 (internal quotation marks omitted).

### 4. The Commissioner's Harmless Error Argument

The Commissioner argues that any error in the ALJ's consideration of Mr. Blasdel's and the other medical source opinions was harmless and therefore does not require action by this court. We disagree. An ALJ's failure to discuss and weigh a medical source opinion is harmless error "if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity." *Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014). In this case, Dr. LaGrand's opinion that Ms. Harrold "is unlikely at this time to be able to work without significant interference from psychological symptoms, primarily anxiety," Aplt. App. Vol. IV, at 569, is inconsistent with the ALJ's RFC determination that Ms. Harrold was mentally capable of working so long as the work was limited to "simple tasks" and did not involve the general public, *id.* Vol. II, at 91; *see* SSR 85-15, 1985 WL 56857, at *4 (1985) (explaining that "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities *(on a sustained basis)* to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and

---

[8] The Commissioner offers various reasons why she thinks the ALJ was correct in finding that the GLMH treatment notes are not consistent with Mr. Blasdel's opinions and that his opinions were not, therefore, supported by relevant evidence. The ALJ did not provide these reasons, however, and "this court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007). For this reason, we also reject the Commissioner's other efforts to provide post hoc justifications for findings the ALJ failed to support in his determination.

13

usual work situations; and to deal with changes in a routine work setting" (emphasis added)). The agency psychologists' opinion that Ms. Harrold's ability to "understand[] and carry[] out instructions and assignments" was limited to "a structured setting," *id.* at 138, 169, also raises questions about her ability to work in a standard workplace, questions that were not acknowledged or addressed by the ALJ.[9] According to the VE's testimony, Mr. Blasdel's opinion was also highly probative and indicated Ms. Harrold had very serious limitations that could preclude competitive work. As a result, any of these medical source opinions, if credited by the ALJ on remand, could alter the ALJ's RFC determination and potentially change the outcome.

### B. Credibility Determination

The Social Security Ruling that governed credibility determinations at the time of the ALJ's determination directs that "[w]hen evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996).[10] Our authority further specifies that "an

---

[9] Nor are we persuaded by the Commissioner's argument that limiting Ms. Harrold to "simple work" automatically encompassed the entirety of Dr. LaGrand's and the agency psychologists' opinions regarding Ms. Harrold's mental limitations. *See Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) (recognizing that restriction to unskilled work does not necessarily account for a claimant's particular mental limitations); *Chapo*, 682 F.3d at 1290 n.3 (same).

[10] In March 2016, the Social Security Administration rescinded SSR 96-7p and replaced it with SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). *See id.*

ALJ's findings with respect to a claimant's credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hardman v. Barnhart*, 362 F.3d 676, 678-79 (10th Cir. 2004) (internal quotation marks omitted). We agree with Ms. Harrold that the ALJ did not comply with these legal standards in assessing the credibility of her testimony and statements regarding her mental impairments.

The ALJ found that Ms. Harrold's "allegations of disabling pain and limitation are simply not supported by the medical evidence to the extent alleged and the undersigned does not find her to be a fully credible witness." Aplt. App Vol. II, at 94. The reasons he gave for this boilerplate statement were only that Ms. Harrold had "gone extended periods of time without any medical care" and that her testimony regarding her impairments "was out of proportion to the objective medical evidence and inconsistent with the record as a whole." *Id.* The ALJ's discussion in support of these statements, however, relates only to Ms. Harrold's physical symptoms.[11] The ALJ made no findings specific to the credibility of Ms. Harrold's testimony and other statements regarding her mental symptoms,[12] and did not give specific reasons for discounting them or cite specific evidence in support of his determination that they

---

[11] The record also shows that Ms. Harrold was in continuous therapy at GLMH for her mental health issues beginning in May 2013, with multiple sessions in many months.

[12] Ms. Harrold testified at the hearing before the ALJ, among other things, that she suffered from "[m]ajor anxiety attacks," could not "handle being around hardly anybody," and had trouble focusing and finishing tasks. Aplt. App. Vol. II, at 110, 113. Similar statements by Ms. Harrold are reported throughout her medical record.

were not credible. The ALJ's credibility determination with respect to Ms. Harrold's statements regarding her mental impairments did not, therefore, comply with the relevant legal standards.

### C. Consideration of the Record

Finally, Ms. Harrold asserts that the ALJ erred because he failed to consider all of the evidence in the record regarding her mental impairments. *See* 20 C.F.R. § 404.1520(a)(3) (requiring adjudicator to consider all evidence in the record). To demonstrate compliance with this requirement, an ALJ need not discuss every piece of evidence in his decision, but must, at minimum, discuss "the evidence supporting his decision" and "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996); *see also Frantz*, 509 F.3d at 1302 (holding ALJ erred by ignoring evidence that would support disability finding while highlighting evidence favorable to finding no disability).

In this case, as described above, the ALJ improperly failed to evaluate and discuss several of the medical source opinions regarding Ms. Harrold's mental limitations, as well as her testimony and statements regarding these limitations. In addition, although he mentioned that Ms. Harrold received treatment and medication from GLMH, he did not discuss the records concerning her treatment there, which included significantly probative evidence supporting her claim. This supporting evidence includes but is not limited to the GAF scores of 47 and 48 that Mr. Blasdel assigned her during the course of her treatment. These scores, which are consistent

16

with the GAF 45 score assigned by Dr. LaGrand, reflect Mr. Blasdel's opinion that Ms. Harrold has serious mental symptoms or impairments, symptoms or impairments that could negatively affect her ability to hold a job. *See Langley*, 373 F.3d at 1123 n.3 (reporting that GAF score of 41-50 indicates serious symptoms or impairments in functioning "such as inability to keep a job"); *Keyes-Zachary*, 695 F.3d at 1164 (reporting testimony by vocational expert that GAF scores in the 46-50 range would eliminate all jobs because a person with these scores cannot maintain a job); *see generally Pate-Fires v. Astrue*, 564 F.3d 935, 944 (8th Cir. 2009) (collecting cases in which VE or medical expert testified that a GAF score below 50 is generally incompatible with the ability to work). GLMH's treatment notes also reflect that Ms. Harrold was consistent in reporting severe mood instability that alternated between extreme depression and manic phases; frequent, intense panic attacks with agoraphobic avoidance; auditory hallucinations; and other symptoms that affected her daily activities.

On remand, the ALJ must consider the GLMH treatment notes and other evidence in the record regarding Ms. Harrold's mental impairments. If he finds upon such consideration that Ms. Harrold is not disabled, he must discuss the substantial evidence supporting this conclusion, as well as his reasons for rejecting the evidence supporting Ms. Harrold's claim, as required by applicable regulations and policies and our authority.

## CONCLUSION

For the reasons described above, we conclude that the ALJ failed to comply with relevant legal standards in his consideration of the evidence regarding Ms. Harrold's mental impairments. Therefore, we reverse the denial of benefits and remand this action to the district court with directions to remand it to the Commissioner for further proceedings consistent with this decision.

Entered for the Court

Bobby R. Baldock
Circuit Judge