**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**June 10, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

LORETTA CASTILLE,

    Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

    Defendant - Appellee.

No. 19-1324
(D.C. No. 1:18-CV-01980-NYW)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **LUCERO**, and **HARTZ**, Circuit Judges.
_____

Loretta Castille appeals pro se from a district court order affirming the

Commissioner's denial of her applications for disability insurance benefits (DIB) and

supplemental social-security income (SSI).  Exercising jurisdiction under 28 U.S.C.

§ 1291 and 42 U.S.C. § 405(g), we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## Background

Ms. Castille has a bachelor's degree in business administration and has worked as a telemarketer and an appointment clerk. She suffers from diabetes mellitus with neuropathy, right ankle sprain/strain, cataracts, and obesity, and she alleges she became disabled in October 2015, at the age of 58, when she fell on the sidewalk.[1]

Ms. Castille has primarily seen two doctors for treatment: Florin Costache, D.P.M., and Adam Abraham, M.D. Dr. Costache treated Ms. Castille's right ankle sprain/strain, prescribing an orthopedic walking boot for her in October 2015. In November he recommended she "gradually phase out of the boot." R., Vol. II at 383. By March 2016, Ms. Castille's ankle had improved to the point that she had "no pain with foot and ankle range of motion" and normal strength with full range of motion "against maximal resistance bilaterally for foot and ankle extension, flexion, inversion, and eversion." *Id.* at 410. Nevertheless, during an April 2016 appointment Dr. Costache signed Ms. Castille's "Colorado Department of Human Services Med-9 Form" and checked a box for permanent and total disability due to "[m]usculoskeletal disorders." *Id.* at 427. By August 2016, Ms. Castille was "6 hours out of the boot" each day and exhibiting "no pain with foot and ankle range of motion." *Id.* at 442, 445. That October,

---

[1] This is Ms. Castille's second attempt to obtain DIB and SSI. Her first attempt ended in March 2015, when the Appeals Council denied her request for review of an Administrative Law Judge's decision that she was not disabled due to diabetes mellitus, hypertension, peripheral neuropathy, and obesity. She filed her second round of DIB and SSI applications in May and June 2015.

Ms. Castille was "doing well," *id.* at 453, and she was "improving" in March 2017, *id.* at 517.

Dr. Abraham saw Ms. Castille multiple times from November 2015 to June 2017 for care of diabetes. He reported it was under "excellent control" in November 2015, *id.* at 378, and "well-controlled" in March 2017, *id.* at 520.

To be sure, Ms. Castille's diabetic neuropathy was problematic, at least early on. In February 2016 she told Dr. Abraham that she was "doing lots of walking" and was experiencing "burning discomfort in her feet." *Id.* at 403. She did say that gabapentin "adequate[ly] . . . control[led] her pain." *Id.* Yet, in October 2016, Dr. Abraham, in response to her request for a "disability letter," concluded she had "pronounced" neuropathy and suspected she would "meet criteria for disability." *Id.* at 450.

Later appointments with Dr. Abraham did not say much about Ms. Castille's neuropathy. In a December 2016 progress note, Dr. Abraham reported that Ms. Castille said she was "doing well," *id.* at 465, and he noted that she was taking gabapentin for neuropathic pain. During a June 2017 appointment Ms. Castille said her "[f]eet [were] doing better with help from Dr. Costache" and she was "thinking about going back to school to finish" her master's degree. *Id.* at 527.

In mid-June 2017, registered occupational therapist (OTR) Kristine Couch performed a "Functional Abilities Evaluation" (FAE) on Ms. Castille and completed a statement regarding her residual functional capacity (RFC). *Id.* at 474. Among other things, OTR Couch opined that Ms. Castille's pain was severe enough to constantly interfere with the attention and concentration needed to perform simple work tasks, that

3

Ms. Castille could walk one city block if given "rests," *id.* at 509, and that Ms. Castille was likely to be either absent from work or unable to complete an eight-hour workday five or more days each month.

On June 21, Ms. Castille saw Dr. Abraham "primarily for an administrative encounter." *Id.* at 529. "Despite numerous attempts [by Dr. Abraham] to try to see if there was something that [he] could specifically do for [Ms. Castille]," she simply wanted him to see the FAE and sign it, which he did. *Id.* He noted that Ms. Castille had "apparently self-referred [to OTR Couch] regarding questions about disability." *Id.* at 530.

A few weeks later, at a hearing before an Administrative Law Judge (ALJ), Ms. Castille, who was represented by counsel, testified that her problems began in October 2015 when she fell on the sidewalk. She described her "major problem" as diabetic neuropathy, manifesting as a severe burning pain. *Id.* at 63. She stated it was difficult to walk and stay focused, and that she needed a cane to effectively ambulate. But she indicated that she could walk for "[a]bout fifteen minutes" at a time, that she had walked that duration from the light-rail station to the hearing, and that she planned to walk back to the light-rail station after the hearing. *Id.* at 75. Further, she reported that although she generally remains in her home, she leaves for doctor appointments, shopping, and church, where she does "a little gardening," *id.* at 86. For travel, she takes the bus. Regarding in-home chores, she testified that she can do tasks such as cleaning for about 15 minutes, but then has to "[r]est for a minute" to "get . . . it all done." *Id.* at 82.

4

A vocational expert (VE) testified that Ms. Castille's prior, sedentary jobs could be performed by a hypothetical claimant who could carry less than ten pounds frequently and ten pounds occasionally, stand or walk two hours in a normal workday with or without a cane, sit without limitation, and use "frequent [near and far] visual acuity," *id.* at 95.

As relevant here, disability under the Social Security Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ concluded that Ms. Castille was not disabled. She found that Ms. Castille's severe impairments–diabetes, ankle sprain/strain, cataracts, and obesity–did not either singularly or in combination meet or equal the severity of a listed impairment. She also found that Ms. Castille had the RFC to perform sedentary work that did not, among other things, involve standing or walking more than two hours in a workday. In formulating the RFC, the ALJ gave "little weight" to OTR Couch's RFC statement and Dr. Abraham's approval of that statement. *Id.* at 48. The ALJ explained that the limitations identified in the statement were inconsistent with Ms. Castille's "broad range" of daily-living activities and her medical records indicating that her ankle was improving, she was spending more time out of her boot, and she had her diabetes under control. *Id.* at 48. Also, the ALJ gave "little weight" to Dr. Costache's opinion on the Med-9 form because the standard for Colorado disability benefits is different from the standard for social-security benefits, the issue of disability is reserved to the Commissioner, and

Dr. Costache did not indicate what evidence he relied on to form his opinion. *Id.*

Finally, the ALJ cited the VE's testimony and concluded that Ms. Castille's RFC enabled her to perform past relevant work as a telemarketer and an appointment clerk.

After the Appeals Council denied Ms. Castille's request for review, she appealed pro se to the district court. A federal magistrate judge, proceeding with the parties' consent, affirmed. The magistrate judge construed Ms. Castille's issues as (1) whether the ALJ properly found she suffers from only four severe impairments; (2) whether she has an impairment that meets or equals the severity of a listed impairment; and (3) whether she has the RFC to perform sedentary work. We likewise construe Ms. Castille's appellate arguments.[2]

### Discussion
### I. Standards of Review

"We review the district court's decision de novo and independently determine whether the ALJ's decision is free from legal error and supported by substantial evidence." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Frantz v. Astrue*, 509 F.3d 1299, 1300 (10th Cir. 2007) (internal quotation marks omitted).

---

[2] Ms. Castille's handwritten opening appellate brief is difficult to read. Further, she appears to raise matters that have no bearing on the ALJ's decision, such as summary-judgment standards and "the last human wrong-doer" rule. Aplt. Opening Br. at 3. Because she is pro se, we will construe her filings liberally as raising the issues identified by the magistrate judge, but we do not act as her advocate. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

## II. Severe Impairments

A severe impairment is defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities," and is required for a disability finding. 20 C.F.R. §§ 404.1520(c), 416.920(c). The ALJ identified diabetes mellitus with neuropathy, right ankle sprain/strain, cataracts, and obesity, as Ms. Castille's severe impairments. These four medical conditions are by far the predominant conditions that appear throughout Ms. Castille's medical records. While there is occasional reference to hypertension, the ALJ noted that Ms. Castille is able to treat it with medication, and she found it did not significantly limit Ms. Castille's ability to do basic work activities and was therefore not severe. Substantial evidence supports the ALJ's finding. *See, e.g.*, R., Vol. II at 465 (Dr. Abraham's December 2016 progress note, describing Ms. Castille's hypertension as under "good control").

## III. Listings

Listed impairments are "conclusively presumed to be disabling." *Lax v. Astrue*, 489 F.3d 1080, 1085 (10th Cir. 2007) (internal quotation marks omitted). "For a claimant to show that [her] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

The ALJ found that Ms. Castille's right ankle sprain/strain did not meet or medically equal Listing 1.02(A), which requires an "inability to ambulate effectively," 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 1.02A, "mean[ing] an extreme limitation of the

7

ability to walk," *id.* § 1.00B(2)(b)(1). Substantial evidence supports the ALJ's finding. *See, e.g.*, R., Vol. II at 403 (Dr. Abraham's February 2016 progress note that Ms. Castille said she was "doing lots of walking"); *id.* at 453 (Dr. Costache's October 2016 progress note that Ms. Castille was "able to walk without the boot past 6 [hours]"); *id.* at 75-76 (Ms. Castille's hearing testimony that she could walk for 15 minutes at a time). Although Ms. Castille uses a cane to walk, the Listing requires use of an assistive walking device that "limits the functioning of both upper extremities," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B(2)(b)(1), as occurs for example with "the use . . . of *two* canes," *id.* § 1.00B(2)(b)(2) (emphasis added).

The ALJ found that Ms. Castille's peripheral neuropathy did not meet or medically equal the criteria of Listing 11.14. That listing requires either (A) an "extreme limitation . . . in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities," or (B) marked limitations in both physical functioning and one other category, such as "[c]oncentrating, persisting, or maintaining pace." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 11.14(A), (B). In finding the listing inapplicable, the ALJ noted Ms. Castille's ability to effectively ambulate and the lack of evidence showing either extreme or marked limitations in the requisite abilities. Substantial evidence supports the ALJ's finding. *See, e.g.*, R., Vol. II at 75-76, 79, 82, 86 (Ms. Castille's hearing testimony describing her abilities to walk, garden at her church,

8

shop, and clean her home); *id.* at 403 (Ms. Castille's February 2016 statement to Dr. Abraham that medication "adequate[ly] . . . control[led]" her neuropathic pain).[3]

The ALJ found that Ms. Castille's cataracts did not meet or medically equal the criteria of Listings 2.02 (loss of central vision acuity), 2.03 (contraction of visual field), or 2.04 (visual impairment or loss of visual efficiency). The ALJ explained that no treating or examining physician had supplied the clinical or laboratory findings necessary for any of these listings. Substantial evidence supports the ALJ's determination.

As for Ms. Castille's obesity,[4] the ALJ found it "did not meet or equal the requirements set forth in the listings found in any musculoskeletal, respiratory, or

---

[3] Although OTR Couch's RFC statement declared drastic limitations in multiple categories, the ALJ gave sufficient reasons to afford her opinions, and Dr. Abraham's endorsement of that statement, little weight. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (approving ALJ's attribution of "very little weight" to treating physicians' RFC opinions where the ALJ cited "contrary, well-supported medical evidence" and noted that those physicians had failed to "give weight to contrary evidence showing [the claimant's] greater functional capacity"); *see also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012) ( "In the case of a nonacceptable medical source like [a therapist], the ALJ's decision is sufficient if it permits us to follow the adjudicator's reasoning." (internal quotation marks omitted)).

We acknowledge that Dr. Abraham stated in an October 2016 progress note that Ms. Castille's diabetic neuropathy could "meet criteria for disability." R., Vol. II at 450. But "[a] statement by a medical source that [the claimant is] 'disabled' or 'unable to work'" is not conclusive on whether the claimant is legally disabled. 20 C.F.R. § 404.1527(d)(1); *id.* § 416.927(d)(1). Similarly, Dr. Costache's opinion on the Med-9 form, represented by his check mark in a box for permanent and total disability due to "[m]usculoskeletal disorders," R., Vol. II at 427, is not determinative of disability. *See Chapo v. Astrue*, 682 F.3d 1285, 1289 (10th Cir. 2012) (concluding that ALJ properly gave no weight to a Med–9 Form).

[4] "Because there is no listing for obesity, [the Commissioner] will find that an individual with obesity 'meets' the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing" or "if there is an

9

cardiovascular body system listing affected by obesity." R., Vol. II at 43. The ALJ

explained she found no "specific clinical signs and diagnostic findings" attending

Ms. Castille's obesity that were necessary to meet the requirements for a listed

impairment. *Id.* The ALJ's determination is supported by substantial evidence, as Dr.

Abraham and Dr. Costache rarely mentioned the effects of obesity on Ms. Castille's other

health conditions.

### IV. RFC

A claimant's RFC is the most she can do despite her limitations. *See* 20 C.F.R.

§§ 404.1545(a)(1), 416.945(a)(1). In assessing RFC the ALJ must consider the record as

a whole, including not only the medical evidence but also the claimant's subjective

allegations. *See id.* §§ 404.1545(a)(3), 416.945(a)(3).

In determining that Ms. Castille's RFC permitted sedentary work involving up to

two hours of standing and/or walking,[5] the ALJ considered her statements to her treating

physicians, as well as her reported daily activities of shopping, going to medical

appointments, and attending church, and her contemplating finishing her master's degree.

We conclude that substantial evidence supports the ALJ's assessment that Ms. Castille is

capable of sedentary work involving a two-hour standing/walking component.

---

impairment that, in combination with obesity, meets the requirements of a listing."
Titles II & XVI: Evaluation of Obesity, SSR 02-1p, 2002 WL 34686281, at *5
(Sept. 12, 2002).

[5] "Although a sedentary job is defined as one which involves sitting, a certain
amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R.
§§ 404.1567(a), 416.967(a).

Moreover, since the ALJ made the necessary findings about the demands of Ms. Castille's past relevant work and their compatibility with her RFC, we perceive no error in the ALJ's decision that Ms. Castille was not disabled. *See Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003) ("An ALJ may rely on information supplied by the VE" determining work demands and whether the claimant can meet those demands despite her limitations (internal quotation marks omitted)).

**Conclusion**

We affirm the district court's judgment.

Entered for the Court

Harris L Hartz
Circuit Judge